Argued and submitted May 15, peremptory writ to issue June 29, 2000

**Diann FREASE,**
**fka Diann Torabi,**
*Plaintiff-Adverse Party,*

*v.*

**Peter K. GLAZER,**
*Defendant-Relator.*

(CC 9809-06647; SC S47016)

4 P3d 56

Bradley F. Tellam, of Barran Liebman LLP, Portland, argued the cause and filed the brief for defendant-relator. With him on the brief were William A. Davis, Marianne M. Ghim, and Alan Gladstone, Abbott, Davis, Rothwell, Mullin & Earle, P.C., Portland.

Lori DeDobbelaere, of Lachenmeier, Enloe & Rall, Portland, argued the cause and filed the brief for plaintiff-adverse party. With her on the brief was Rudy R. Lachenmeier, Portland.

LEESON, J.

## LEESON, J.

In this tort action, the trial court granted plaintiff's motion to compel production for *in camera* review of defendant's files relating to defendant's legal representation of plaintiff's ex-husband, Torabi. Defendant objected to the motion on the grounds that the files were protected by the attorney-client privilege and that the materials in the files were defendant's work product. The trial court ruled that: (1) defendant's client had waived the attorney-client privilege by fleeing the jurisdiction and; (2) in any event, plaintiff had presented evidence sufficient to justify *in camera* review to determine the applicability of the crime-fraud exception to the attorney-client privilege. Defendant then brought the present mandamus proceeding, and this court issued an alternative writ of mandamus. For the reasons that follow, we conclude that defendant is entitled to a peremptory writ of mandamus directing the trial court to vacate its order compelling *in camera* review of defendant's files relating to his representation of Torabi.

The record reveals the following facts. Plaintiff and Torabi, who is a native of Iran, were married in May 1992. During their marriage, they had one child, born in June 1995. Plaintiff and Torabi entered into a stipulated dissolution of their marriage in July 1996. Under the terms of the dissolution judgment, plaintiff was awarded sole custody of the child, and Torabi had visitation rights. The judgment prohibited Torabi from removing the child from the United States without the permission of the court and required him to surrender his United States and Iranian passports to plaintiff before exercising his visitation rights with the child. The judgment also required each party to notify the court if he or she intended to move to a residence that was located more than 60 miles away from the other party. Finally, the judgment awarded Torabi the parties' residence, subject to a lien in favor of plaintiff in the amount of $43,000, which plaintiff assigned to her parents in March 1997. Defendant did not represent Torabi in the dissolution matter.

In July 1996, plaintiff took the child from Oregon to Hawaii. Torabi subsequently retained defendant, who filed motions for an order to show cause why plaintiff should not be held in contempt for removing the child from Oregon and

to change custody of the child from plaintiff to Torabi. The trial court scheduled a hearing on the show-cause motion for September 11, 1996.

Plaintiff returned to Oregon in August 1996, and defendant took her deposition on August 27. At the conclusion of the deposition, the parties agreed to postpone the show-cause hearing that had been scheduled for September 11, 1996, on the conditions that plaintiff return the child to Oregon by September 3, provide Torabi with make-up visitation starting the next day, and immediately surrender her passport to her attorney, Matthews. On August 28, Matthews scheduled a mediation session for the parties for September 11, 1996, at the same time that they were to appear at the hearing on the motions to show cause and to change custody that the parties conditionally had agreed to postpone. Also on August 28, plaintiff went into hiding with the child, and she did not return the child to Oregon on September 3, 1996. On September 4, Matthews resigned as plaintiff's attorney.

Defendant appeared for the hearing on the motions to show cause and to change custody on September 11. Plaintiff did not appear, either personally or through an attorney. Defendant explained to the court that, as he understood the situation, plaintiff was not going to appear and that Matthews had resigned as her attorney. After that hearing, the circuit court entered an order transferring legal and physical custody of the child to Torabi. The order, which defendant drafted, contained no requirement that Torabi surrender his passports to plaintiff as a condition of custody.

Plaintiff was arrested for custodial interference in February 1998, approximately 17 months after she had gone into hiding with the child. After plaintiff's arrest, Torabi took custody of the child. For the next several months, plaintiff sought to have the criminal charges against her dismissed and to regain legal custody of the child. Defendant provided legal advice to Torabi throughout that period. In June 1998, Torabi disappeared with the child. Although there is no conclusive proof, the most reasonable inference is that Torabi took the child to Iran.

In September 1998, plaintiff filed this action against defendant. Her complaint asserts claims for intentional

infliction of emotional distress and misrepresentation, based on defendant's appearance at the show-cause hearing on September 11, 1996. According to plaintiff's complaint, defendant knew that the September 11 show-cause hearing had been canceled because, "at the deposition [the parties] had postponed the hearing by agreement and subsequently scheduled a mediation to occur on that very date." The complaint alleges that defendant failed either to inform the court of those events or of the fact that two attorneys had made telephone calls to him indicating that they might be representing plaintiff. Because of defendant's conduct, the complaint alleges, "[p]laintiff was not allowed the opportunity to be heard regarding the Motion and Order to Show Cause," and, as a result, she "wrongfully lost custody of her daughter and no longer has access to her daughter and in all likelihood, will never see her daughter again." The complaint seeks damages of more than $2 million.

In November 1998, plaintiff's parents received an order allowing them to take possession of Torabi's house to satisfy the money judgment against Torabi that plaintiff had assigned to them in March 1997. The moving company that packed Torabi's possessions made an inventory of what he had left behind, which included three letters that defendant had written to Torabi in February, March, and April 1998, regarding Torabi's ongoing custody dispute with plaintiff. Torabi apparently had left the letters on his desk. Plaintiff's parents disclosed the contents of the letters to plaintiff.

On November 15, 1999, after defendant had filed a motion for summary judgment on plaintiff's claims, but before the court had ruled on the motion, plaintiff filed a motion to compel production of defendant's files relating to his representation of Torabi. Defendant objected to the motion to compel on grounds of relevance, the attorney-client privilege, and the work-product doctrine. Plaintiff offered two theories to support her argument that the attorney-client privilege did not bar production of the documents. First, she argued that Torabi had waived the privilege when he left behind the three letters that plaintiff's parents had acquired when they took possession of Torabi's house. Second, she asserted that Torabi had retained defendant in furtherance of his intent to commit or plan to commit a crime or fraud, so

the materials were not covered by the attorney-client privilege under OEC 503(4)(a).[1]

On November 19, 1999, the trial court ordered defendant to turn over his files regarding his representation of Torabi for review *in camera*. The court explained the basis for the order as follows:

"[T]here is evidence in all of the documentation that I have had presented to me, a plan, to commit a criminal act. The evidence of that plan to commit a criminal act is that there was an order regarding custody and an order regarding turning over passports.

"I'm also well aware, as I'm sure any member of the bar is aware, that it is illegal to take a child out of the jurisdiction of the Court, flee to another country, when the other party has any rights whatsoever to that child. That by seeking an order changing custody, without the previous turnover of the passport, that that was done intentionally. It was done intentionally to increase [Torabi's] ability and rights over that child. They're not rights—ability to flee the country, because there is no other reason to take out of an order turning over the passport.

"* * * * *

"I'm also making a note that once someone has committed a criminal act and fled the country, and I believe there is no question or dispute about that here, they've left behind part of their attorney-client privilege. They've fled the country, they have refused to respond, that they have waived that privilege to attorney-client relationship."[2]

This mandamus proceeding followed. The issues are twofold: (1) whether the trial court erred as a matter of law when it held that Torabi waived the attorney-client privilege when he fled the jurisdiction; and (2) whether the trial court erred in ordering *in camera* review of defendant's files to determine whether material in those files contained evidence that might establish the applicability of the crime-fraud exception to the attorney-client privilege.

---

[1] The relevant parts of OEC 503 are quoted later in this opinion.

[2] The trial court did not rule on plaintiff's argument that Torabi had waived the attorney-client privilege when he left behind the three letters that plaintiff's parents had acquired when they took possession of Torabi's house.

▬▬ The attorney-client privilege is codified as Rule 503 of the Oregon Evidence Code. It provides, in part:

"(2) A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:

"(a) Between the client or the client's representative and the client's lawyer or a representative of the lawyer;

"* * * * *

"(3) The privilege created by this section may be claimed by the client, a guardian or conservator of the client, the personal representative of a deceased client, or the successor, trustee, or similar representative of a corporation, association, or other organization, whether or not in existence. The person who was the lawyer or the lawyer's representative at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the client."

Although the attorney-client privilege belongs exclusively to the client, *State ex rel OHSU v. Haas*, 325 Or 492, 505, 942 P2d 261 (1997), the client's attorney may claim the privilege on the client's behalf, OEC 503(3). An attorney's statutory authority to do so is consistent with an attorney's ethical obligation to protect a client's confidences and secrets. *See* DR 4-101 (defining confidences as "information protected by the attorney-client privilege").

▬▬ The attorney-client privilege is one of the oldest and most widely recognized evidentiary privileges. *See State v. Jancsek*, 302 Or 270, 274, 730 P2d 14 (1986) (so stating, citing Laird C. Kirkpatrick, *Oregon Evidence*, 146 (1982)); *Upjohn Co. v. United States*, 449 US 383, 389, 101 S Ct 677, 66 L Ed 2d 584 (1981) (same, citing 8 J. Wigmore, *Evidence*, § 2290 (McNaughton rev 1961)). The purpose of the privilege " 'is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.' " *Haas*, 325 Or at 500 (quoting *Upjohn*, 449 US at 389). However, the attorney-client privilege is not absolute. A client may waive it voluntarily, OEC 511; *Haas*, 325 Or at

498, and OEC 503 creates exceptions to it. One such exception is relevant to this case:

> "(4) There is no privilege under this section:
>
> "(a) If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud[.]"

OEC 503(4)(a). A party seeking to invoke the crime-fraud exception to the attorney-client privilege "must show that the client, when consulting the attorney, knew or should have known that the intended conduct was unlawful." *State ex rel N. Pacific Lbr. v. Unis*, 282 Or 457, 464, 579 P2d 1291 (1978).

■ In this case, the parties do not dispute the existence of the attorney-client privilege. The first question is whether Torabi waived that privilege by fleeing the jurisdiction. OEC 511 provides that a client waives the attorney-client privilege by voluntarily disclosing or consenting to the disclosure of "any significant part of the matter or communication." The trial court did not hold that Torabi voluntarily waived the privilege. Rather, as noted, the trial court held that, "once someone has committed a criminal act and fled the country, * * * they have waived [the attorney-client privilege]." Although plaintiff concedes that there is no authority to support the trial court's "waiver-by-flight" theory, she argues that such a ruling nonetheless should be upheld in circumstances where someone flees the jurisdiction with a child.

We find no support in the wording of OEC 511 or elsewhere for the trial court's "waiver-by-flight" theory or the notion that, as a matter of law, a custodial parent who flees the jurisdiction with his or her own child waives the attorney-client privilege. The trial court erred in holding that Torabi waived his attorney-client privilege by fleeing the jurisdiction.

■ We turn to the question whether the trial court erred in ordering defendant to turn over his files concerning his representation of Torabi for *in camera* review to determine whether the contents of those files support application of the crime-fraud exception to the attorney-client privilege. As a

preliminary matter, we address the appropriate legal standard for a trial court to apply in determining whether it is appropriate to order an *in camera* review of materials for which the attorney-client privilege has been asserted. Although neither the Oregon Evidence Code nor this court's prior cases addresses that issue, the United States Supreme Court has addressed it.

■ In *United States v. Zolin*, 491 US 554, 109 S Ct 2619, 105 L Ed 2d 469 (1989), the Court first noted that disclosure of allegedly privileged materials to a trial court for the purpose of having the court determine the merits of a claim of privilege does not have the legal effect of terminating the privilege. 491 US at 568. The Court also noted that *in camera* review is the least intrusive means for determining whether the crime-fraud exception applies. *Id.* at 572. The Court held that a "lesser evidentiary showing is needed to trigger in camera review than is required ultimately to overcome the [attorney-client] privilege." *Id.* Under *Zolin*, before a trial court may engage in *in camera* review at the request of the party opposing the attorney-client privilege on the basis of the crime-fraud exception, that party "must present evidence sufficient to support a reasonable belief that in camera review may yield evidence that establishes the exception's applicability." *Id.* at 574-75.

■ ■ We conclude that *Zolin* provides an appropriate framework for determining whether a trial court may order *in camera* review of allegedly privileged materials to determine if they fall within the crime-fraud exception, and we adopt that approach as the correct means for determining the applicability of the crime-fraud exception under OEC 503(4)(a).[3] We turn to the facts of this case to determine

---

[3] We note that, if the party asserting the privilege under OEC 503 believes that the party opposing the privilege has not presented evidence that is sufficient to support a reasonable belief that *in camera* review might yield evidence that establishes the applicability of the crime-fraud exception, then the party asserting the privilege may challenge the trial court's order to inspect the materials by seeking relief in mandamus, as defendant has done in this case. However, having opposed plaintiff's motion for *in camera* review, defendant was not required to seek relief in mandamus at that time to avoid waiving the right to do so. The party asserting the attorney-client privilege, who properly has opposed a motion for *in camera* review, in a proceeding brought after *in camera* review, may seek a writ of mandamus on either or both of the following grounds: (1) that the trial court erred in holding that there was sufficient evidence to support a reasonable belief that *in camera* review

whether plaintiff produced evidence sufficient to support a reasonable belief that *in camera* review might yield evidence that the crime-fraud exception applies to defendant's files concerning his representation of Torabi.

As noted, plaintiff contends that Torabi retained defendant in 1996 for the purpose of obtaining custody of his and plaintiff's child so that he could flee the jurisdiction with the child. The record contains two pieces of evidence regarding Torabi's intent. First is the September 11, 1996, order changing custody of the child from plaintiff to Torabi. Unlike the divorce judgment, which had required Torabi to give his passports to plaintiff when he exercised his visitation rights with the child, the change-of-custody order contained no requirement that Torabi give his passports to plaintiff. Plaintiff contends that the only possible reason that Torabi would have retained defendant to seek custody of the child without the passport provision was to further Torabi's plan to flee with the child. The only other evidence that plaintiff presented to establish that Torabi had retained defendant in furtherance of his plan was plaintiff's "gut feeling" that Torabi was going to take the child to Iran.

We agree with defendant that, on this record, plaintiff has not presented evidence to support a reasonable belief that an *in camera* review of defendant's files regarding his representation of Torabi might yield evidence that supports application of the crime-fraud exception to the attorney-client privilege. Plaintiff does not dispute that Torabi had grounds for moving to change custody of the child after plaintiff had left the jurisdiction, thereby preventing Torabi from exercising his right to visitation. Nothing in the fact that Torabi exercised his right to move for a change of custody, or that the ensuing order did not contain the passport requirement, suggests that Torabi retained defendant's services to assist him in fleeing with the child almost two years later. Plaintiff's "gut feeling" that Torabi had intended to flee the country with the child is not evidence that would help to establish a reasonable belief regarding Torabi's intent when

might yield evidence that establishes the applicability of the crime-fraud exception; or (2) that, after reviewing the allegedly privileged materials *in camera*, the trial court erred in holding that there was sufficient evidence to conclude that the crime-fraud exception applies to some of or all the materials.

he retained defendant to represent him. Neither does that "gut feeling" support a reasonable belief that anything in defendant's files regarding his representation of Torabi might establish that the crime-fraud exception applies.

On this record, we conclude that plaintiff failed to produce sufficient evidence to support a reasonable belief that *in camera* review might yield evidence that the crime-fraud exception applies to defendant's files concerning his representation of Torabi. Accordingly, the trial court erred in ordering defendant to turn over those files for *in camera* review.[4]

A peremptory writ shall issue directing the trial court to vacate its order compelling *in camera* review of defendant's files regarding his representation of Torabi.

Peremptory writ to issue.

---

[1] In light of our holding, we need not address defendant's argument that his files also are protected as work product.