Argued and submitted July 27, reversed and remanded December 21, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEVE JAMES TAYLOR,
aka Steven James Taylor,
*Defendant-Appellant.*

Washington County Circuit Court
D091262T; A143356

268 P3d 795

Kenneth A. Kreuscher argued the cause for appellant. With him on the brief was Portland Law Collective, LLP.

Pamela J. Walsh, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

### NAKAMOTO, J.

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010. Defendant assigns error to the trial court overruling his objections and directing him to answer questions about conversations that he had with his attorney. We conclude that the trial court incorrectly ruled that defendant waived his lawyer-client privilege when he testified, and that error prejudiced defendant. Accordingly, we reverse and remand.

We review a trial court's rulings on the lawyer-client privilege for errors of law. *Frease v. Glazer*, 330 Or 364, 369, 4 P3d 56 (2000). Under the Oregon Constitution, we must affirm the judgment of the trial court even in the case of error if "there is little likelihood that the error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003).

At trial, the state established the following facts. Washington County Deputy Sheriff Pastori observed defendant fail to signal sufficiently in advance of changing lanes. Deputy Sheriff Wilson also observed defendant fail to signal sufficiently in advance of a right turn. The deputies stopped defendant. During the stop, Wilson noted that defendant had watery, bloodshot eyes, droopy eyelids, and a flushed face. When defendant spoke, his speech was slightly slurred. Wilson detected a faint odor of alcohol from defendant. Pastori asked defendant on an impairment scale of zero-to-10, with 10 being the most impaired, how defendant felt. Defendant replied that he "felt like a 2" and felt light-headed. Deputy Wilson administered three field sobriety tests, and defendant failed them all.[1] Defendant initially told Wilson that he had had one beer at a bar, but after failing the sobriety test, defendant stated that he had had two beers. Deputy Wilson arrested defendant for driving under the influence of alcohol. Just after the arrest, Deputy Wilson discovered two

---

[1] Wilson administered the horizontal gaze nystagmus test, the "walk and turn" test, and the "one leg stand" test.

open beer bottles in defendant's car, with about one sip missing from each bottle.[2]

Wilson took defendant to the sheriff's office. He read defendant the Department of Motor Vehicles implied consent form, and defendant agreed to submit to a breath test. Wilson checked defendant's mouth for contaminants and performed the 15-minute observation period that is required before conducting the breath test. After 15 minutes, Wilson asked whether defendant had regurgitated anything. Defendant replied that he had acid reflux and had burped up some stomach acid. Wilson waited another 15 minutes, and asked again whether he had regurgitated. This time, defendant replied that he had not. Wilson administered a Breathalyzer test and recorded a blood alcohol content (BAC) of 0.13 percent, which is 0.05 percent above the legal limit. ORS 813.010(1)(a). Defendant did not call a lawyer while he was at the sheriff's office.

Defendant challenged the validity of the breath test and testified that, even though he told Wilson that he did not regurgitate anything after the second 15-minute observation period, he had had acid reflux again. On cross-examination, the prosecutor challenged defendant's credibility, asking whether he was lying about having acid reflux after the second observation period. Defendant explained that he had told Wilson that he did not have acid reflux because he was nervous and had been waiting a long time. The prosecutor pressed defendant, twice asking him what he had to lose by waiting. Defendant responded:

"[Defendant]:   Sitting there for a long time, and never getting it out—a refusal.

"[Prosecutor]:   How did you know a refusal was a possibility?

"[Defendant]:   If you don't take the test in a certain amount of time, I would think that the officer was going to make a decision.

"[Prosecutor]:   Why did you think that?

---

[2] There was a passenger in defendant's car.

"[Defendant]:   He's going to have to do one or the other.

"[Prosecutor]:   How do you know?

"[Defendant]:   Administer the test or say refusal. It just makes sense to me.

"[Prosecutor]:   So you were just sitting there speculating that a refusal might be a possibility?

"[Defendant]:   No. I wasn't. But, it was a possibility—yeah, it was a possibility. But, I wasn't just sitting there thinking that. I was nervous, and experiencing acid reflux. It's uncomfortable.

"[Prosecutor]:   But you were thinking that if you didn't just deny having the acid reflux, that the officer might enter a refusal?

"[Defendant]:   Not necessarily, but I don't know.

"[Prosecutor]:   *Is it something that you and your attorney talked about since your arrest?"*

(Emphasis added.)

Defense counsel then objected. The court overruled the objection after hearing arguments from counsel and instructed defendant to answer the question:

"[Defense Counsel]:   Objection, your Honor.

"[The Court]:   Hold on. Hold on. [Prosecutor]?

"[Prosecutor]:   Your Honor, it goes to (inaudible).

"[The Court]:   [Defense Counsel]?

"[Defense Counsel]:   I've never heard such a question, your Honor. I think attorney/client privilege is something that should never be asked about.

"[The Court]:   Well he's taking the witness stand, and he wants to know if he's having discussions about this, so why would that—

"[Defense Counsel]:   About what?

"[The Court]:   If he's asking him if he's had discussion with you about the acid reflux, and he's testifying, isn't he waiving that privilege by testifying?

"[Defense Counsel]:    If that's the court's ruling, fine. I would disagree.

"[The Court]:    Okay. I'm going to overrule the objection. You should answer the question.

"[Defendant]:    The question again was?

"[Prosecutor]:    Is this something that you discussed with your attorney about the refusal?

"[Defendant]:    No I did not. Didn't know anything about it."

During closing arguments, the prosecutor referred back to defendant's testimony, speculating that defendant had, in fact, had conversations with his attorney:

"[Prosecutor]:    But, when the defendant testified for you, his story was, well, I knew that if I didn't provide the sample, then he was going to enter a refusal. And, that doesn't make sense, using your common sense and reason. What would have led him to believe that was the case? That Deputy Wilson was going to enter in a refusal if he said, at that point, I had acid reflux again? What would have led him to believe that? *His conversations with his defense attorney since his arrest.*

"No one thinks about the possible refusal entry during the breath test. *Somebody put that in his mind.*"

(Emphasis added.) The jury found defendant guilty of DUII.

On appeal, defendant advances two assignments of error, arguing that the trial court erred when it ruled that defendant had waived his lawyer-client privilege by testifying and when it directed defendant to answer the prosecutor's questions.[3] The state concedes that defendant did not waive his lawyer-client privilege, but nonetheless argues, as an alternative basis for affirmance, that the information the prosecutor sought was not privileged information. The state also asserts that, if the trial court erred in directing defendant to answer the prosecutor's questions and admitting the evidence, the error was harmless.

---

[3] Defendant and the state both present combined arguments on defendant's two assignments of error. We similarly discuss those assignments together.

We agree with and accept the state's concession that defendant did not waive his lawyer-client privilege when he testified. A person claiming the lawyer-client privilege waives that privilege if the person voluntarily discloses or consents to disclosure of any significant part of the matter or communication. OEC 511.[4] A defendant testifying on his own behalf does not necessarily waive his lawyer-client privilege. Indeed, the legislative commentary of OEC 511 provides that

> "A person, merely by disclosing a subject which the person has discussed with an attorney * * * does not waive the applicable privilege; the person must disclose part of the communication itself in order to effect a waiver. As McCormick points out:
>
> " 'By the prevailing view, which seems correct, the mere voluntary taking the stand and testifying to facts which were the subject of consultation with counsel is no waiver of the privilege for secrecy of the communications to [one's] lawyer. It is the communication which is privileged, not the facts.' [McCormick, *Evidence* § 93, 103 (2d ed 1972)]."

Legislative Commentary to OEC 511, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 511.02, 401 (5th ed 2007) (first brackets in original).

Here, defendant did not testify to anything his lawyer told him about the law, the process of trial, or testifying. Rather, before he was ordered to testify about what he discussed with his lawyer, defendant merely testified to facts that the prosecutor suggested were the subject of defendant's consultation with his attorney. Accordingly, he did not waive his lawyer-client privilege.

We turn to the state's alternative basis for affirming the trial court's ruling. We may affirm a correct trial court

---

[4] In part, OEC 511 provides:

"A person upon whom [OEC 503 to 514] confer a privilege against disclosure of the confidential matter or communication waives the privilege if the person or the person's predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication. This section does not apply if the disclosure is itself a privileged communication. Voluntary disclosure does not occur with the mere commencement of litigation * * *."

ruling, even if the trial court's legal reasoning was erroneous, if (1) the facts in the record are sufficient to support an alternative basis for affirmance; (2) the trial court's ruling is consistent with the view of the evidence under the alternative basis; and (3) the record is materially the same as would have been developed had the prevailing party raised the alternative basis for affirmance. *Outdoor Media Dimensions Inc. v. State of Oregon,* 331 Or 634, 659-60, 20 P3d 180 (2001).

The state contends that the prosecutor did not seek privileged information. In the state's view, defendant's conversations with his attorney regarding breath test "refusals" were not privileged because of the crime-fraud exception to the lawyer-client privilege. The showing needed to invade the confidentiality of the lawyer-client relationship, though, is a significant one.

The lawyer-client privilege prevents compelled disclosure of confidential communications between an attorney and her client made for purposes of obtaining legal advice. OEC 503(2).[5] The purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Frease,* 330 Or at 370 (internal quotation marks omitted); *accord State ex rel OHSU v. Haas,* 325 Or 492, 500, 942 P2d 261 (1997). The privilege, however, is not absolute. The crime-fraud exception under OEC 503(4)(a) provides, in part:

---

[5] OEC 503(2) provides:

"A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:

"(a)  Between the client or the client's representative and the client's lawyer or a representative of the lawyer;

"(b)  Between the client's lawyer and the lawyer's representative;

"(c)  By the client or the client's lawyer to a lawyer representing another in a matter of common interest;

"(d)  Between representatives of the client or between the client and a representative of the client; or

"(e)  Between lawyers representing the client."

"There is no privilege under this section:

"(a) If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud[.]"

The party invoking the crime-fraud exception has the burden to show that the client, when seeking the attorney's counsel, knew or should have known that the intended conduct was unlawful. *Frease*, 330 Or at 371.

Here, even assuming that defendant did, in fact, speak to his attorney about refusals to take a breath test, the state had the burden to show that defendant intended to commit perjury when doing so. The state established that defendant told Wilson after the second 15-minute observation period that he had not had acid reflux. Defendant then testified that he, in fact, did have acid reflux after the second 15-minute observation period. The state did not present any direct evidence that defendant intended to commit perjury when he sought legal counsel, and the state's indirect evidence was, at best, speculative. The state's only evidence of intent to commit perjury was defendant's inconsistent statements and the fact that defendant had an attorney for trial but had not spoken with an attorney when he denied having additional acid reflux at the time the deputy administered the Breathalyzer test. As a matter of law, the insinuations that defendant conferred with his trial attorney to learn how to lie and to change the facts at trial and, concomitantly, that defendant's trial attorney helped him to commit perjury, fall well short of what is needed to terminate the lawyer-client privilege. *See Frease*, 330 Or at 373-74 (concluding that, although client sought attorney to change custody order and remove passport restrictions, that was insufficient to warrant even an *in camera* review of attorney's files; the facts did not support a reasonable belief that the files would yield evidence that client retained attorney to assist him in unlawfully removing child from the country).

Moreover, the prosecutor's conduct runs counter to the purpose of the lawyer-client privilege. Allowing the prosecutor to delve into confidential communications between an attorney and her client whenever a client is questioned about

an inconsistent statement would discourage full and frank communication between attorney and client. Although the Evidence Code allows a witness to be impeached by evidence of a prior inconsistent statement, OEC 613,[6] nothing in the Evidence Code suggests that the mere fact of a prior inconsistent statement constitutes a basis for invoking the crime-fraud exception to the lawyer-client privilege. Accordingly, we conclude that the trial court erred when it directed defendant to answer the prosecutor's questions concerning his conversations with his attorney about Breathalyzer test "refusals."

We turn to the state's argument that allowing the prosecutor to question defendant about discussing such "refusal" and breath tests with his lawyer was harmless error. An error is harmless if there is little likelihood that it affected the verdict. *Davis*, 336 Or at 32. The proper analysis is not whether "this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling[,]" but rather, how the error would influence the verdict. *Id*. We consider the nature of the error that occurred below and the context of that error. *Id*. at 32-33. We also consider the importance of the erroneously admitted evidence to the party's theory of the case. *State v. Maiden*, 222 Or App 9, 13, 191 P3d 803 (2008), *rev den*, 345 Or 618 (2009). If the error has no relationship to the jury's determination of its verdict, then there is little likelihood that the error affected the verdict. *Davis*, 336 Or at 33-35.

The state argues that, even if the trial court erred in directing defendant to answer the prosecutor's question, there was significant evidence that defendant was under the influence of alcohol. A person can be convicted of DUII if a

---

[6] OEC 613 provides:

"(1) In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.

"(2) Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in ORS 40.450."

jury either finds that the person's BAC is 0.08 percent or higher, ORS 813.010(1)(a), or the person is "under the influence of intoxicating liquor," ORS 813.010(1)(b). The state notes that defendant failed to properly signal before changing lanes and turning, failed all the field sobriety tests, had a faint odor of alcohol, admitted to feeling light-headed, had two open beer bottles in his car, and had physical symptoms suggesting alcohol impairment. The state concludes that that evidence was sufficient to support the jury's verdict that defendant was guilty of DUII, regardless of defendant's BAC.

We rejected that argument in *State v. Coen*, 203 Or App 92, 125 P3d 761 (2005), *rev den*, 341 Or 141 (2006). In *Coen*, after determining that the trial court erred in admitting the defendant's breath test, we analyzed whether the error was harmless. Even though the defendant admitted to drinking 15 to 16 beers, we concluded the error was not harmless because we had no way of knowing whether the jury found the defendant was under the influence of alcohol based solely on the erroneously admitted breath test or other evidence. *Id.* at 106.

Here, defendant challenged the administration of the Breathalyzer test and the validity of its results. His theory of the case was that the breath test recorded his BAC above the legal limit because he burped up stomach acid, which had some residual alcohol. He was the only witness to testify in his defense, so his entire case rested on his credibility. When the prosecutor first questioned defendant about his conversation with his attorney, defendant was forced to object, and the matter of the lawyer-client privilege was discussed in front of the jury. Once the trial court rejected the assertion of privilege and allowed the prosecutor to question defendant about discussing "refusals" with his attorney, the state used defendant's denial of such communications with his attorney to strongly call into question defendant's and his attorney's credibility, both in the state's cross-examination of defendant as well as in closing argument. Without that question and the subsequent argument, the jury may have believed defendant's testimony and disregarded the breath test. Because we cannot determine whether the jury found defendant intoxicated based solely on defendant's BAC or on

other evidence, and we cannot conclude that there is little likelihood that the error affected the verdict, the error was prejudicial.

Reversed and remanded.