Argued and submitted November 8, 2013, peremptory writ of mandamus to
issue May 30, 2014

## CHRISTIAN M. LONGO,
*Petitioner-Relator,*

*v.*

## Jeff PREMO,
Superintendent,
Oregon State Penitentiary,
*Defendant-Adverse Party.*

## (CC 07C21285; SC S061072)

326 P3d 1152

Mark A. Larrañaga, Seattle, Washington, argued the cause and filed the briefs for relator. With him on the brief were Michelle A. Ryan and Bert Dupré, Portland.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause and filed the brief for adverse party. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Kenneth A. Kreuscher, Portland Law Collective, LLP, Portland, filed the brief for *amicus curiae* Oregon Criminal Defense Lawyers Association.

BALDWIN, J.

**BALDWIN, J.**

In this original proceeding, relator (petitioner), who is the petitioner in the underlying post-conviction case, seeks a writ of mandamus to compel the Marion County Circuit Court judge presiding over this case (the post-conviction court) to issue a protective order with respect to documents and communications subject to the lawyer-client privilege. Petitioner's proposed protective order seeks to prevent adverse party (the state), who is the superintendent of the Oregon State Penitentiary and the defendant in the underlying post-conviction case, from disclosing such information to third parties unrelated to the post-conviction case. For the reasons that follow, we conclude that the post-conviction court's order denying petitioner's motion for a protective order was erroneous, and we direct the issuance of a peremptory writ of mandamus requiring the post-conviction court to vacate that order and issue a protective order.

## I. BACKGROUND

Petitioner was convicted in Lincoln County Circuit Court of seven counts of aggravated murder and sentenced to death. This court affirmed petitioner's judgment of conviction and sentence on direct review in *State v. Longo*, 341 Or 580, 148 P3d 892 (2006), *cert den*, 552 US 835 (2007). Petitioner subsequently filed a petition seeking post-conviction relief, asserting that his court-appointed appellate counsel on direct review had provided inadequate and ineffective assistance in violation of his constitutional right to counsel under Article I, section 11, of the Oregon Constitution[1] and the Sixth Amendment to the United States Constitution.[2]

In the post-conviction proceeding, the state filed a motion to compel petitioner to produce documents relating to his capital murder case. In response, petitioner filed a motion seeking a protective order with respect to materials in his appellate counsel's file that are subject to the lawyer-client

---

[1] Article I, section 11, of the Oregon Constitution provides, "In all criminal prosecutions, the accused shall have the right to *** be heard by himself and counsel."

[2] The Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right *** to have the Assistance of Counsel for his defence."

privilege as defined in OEC 503(2).[3] Petitioner did not object to providing the information to the state to allow it to prepare a defense against petitioner's post-conviction claims. Rather, petitioner sought a protective order to prevent the state from disclosing privileged communications to third parties, particularly third parties who might be associated with prosecuting any future retrial of his criminal case. Petitioner argued that permitting disclosure of the communications without restrictions could result in the prosecutor obtaining privileged information—to which the state would not otherwise have access—that could substantially prejudice petitioner in a future retrial. Petitioner claimed that, if he were to prevail on his post-conviction claims and obtain a remand for additional trial or sentencing proceedings, the prosecutor could use such privileged information in ways that would be difficult to anticipate or prevent.

Petitioner requested that the post-conviction court issue a protective order requiring that any privileged information produced through discovery be used solely for the purpose of litigating the claims presented in his petition for post-conviction relief. Petitioner more specifically requested that the Department of Justice, which represents the state in the post-conviction case, "be barred from turning such documents over to any other persons or offices, including, in particular, law enforcement or prosecutorial agencies, such as the Lincoln County District Attorney's Office," without an order from the post-conviction court permitting it to do so.[4]

---

[3] OEC 503(2) provides, "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client."

Although petitioner also invoked the protection of the lawyer work-product doctrine, he failed to develop his arguments on that point either at trial or in seeking mandamus relief. Thus, we do not separately address any issue pertaining to that doctrine.

[4] In his proposed protective order, petitioner suggested a procedure for identifying and shielding privileged information. The proposed order stated that "[a]ny party producing any materials which that party contends are privileged under this Protective Order shall provide the materials in a manner clearly designating their privileged status" and submit those materials "under seal, in a manner reflecting their confidential nature." If, in the course of litigating petitioner's post-conviction claims, the Department of Justice believed that there "is a need to redisclose to anyone else" information obtained in the documents subject to

After considering the parties' arguments, the post-conviction court determined that the exception to the lawyer-client privilege provided under OEC 503(4)(c)—which states, "There is no privilege" for a "communication relevant to an issue of breach of duty by the lawyer to the client or by the client to the lawyer"—rendered the lawyer-client privilege inapplicable because petitioner had alleged that appellate counsel had breached his duty to petitioner. Thus, the court concluded that the state was free to obtain discovery of confidential communications as relevant to petitioner's post-conviction claims and was not restricted from conveying that information to third parties outside the post-conviction proceeding.

The post-conviction court recognized, however, that any privileged information divulged during the post-conviction proceeding due to OEC 503(4)(c) would again be privileged following the post-conviction case. The court explained:

"To the extent that [petitioner is] requesting * * * a protective order for certain information, it's unnecessary. That information to be derived by [the] exception to the attorney/client privilege [embodied in OEC 503(4)(c)] can only be used in this proceeding and would not be usable subsequently in any other matter because the privilege would resurface. And * * * essentially I think that's all [petitioner is] asking for is to make sure that somehow this * * * not be redisclos[ed], reused, or anything else."

The court entered an order denying petitioner's motion, but suspended implementation of the order so that petitioner could pursue a writ of mandamus.

Petitioner then petitioned this court for a writ of mandamus directing the post-conviction court to issue a protective order, and we issued an alternative writ of mandamus. The post-conviction court declined to vacate the order,

---

the protective order, the proposed order would require counsel to "make specific application to the court prior to any such redisclosure." The proposed order stated that it was to "continue in effect after the conclusion of the post-conviction proceedings and specifically shall apply in the event of a resentencing, except that either party maintains the right to request modification or vacation of this Order upon entry of final judgment" in the post-conviction proceeding.

and this case is now before us for decision.[5] *See* ORS 34.250(7). Petitioner now argues that we should direct the post-conviction court to issue a protective order prohibiting the state from disclosing to third parties, particularly prosecutorial authorities, confidential lawyer-client communications contained in petitioner's appellate counsel's file without leave from the post-conviction court permitting the state to do so. In petitioner's view, without a protective order, there is no meaningful way to ensure that, if post-conviction relief is obtained and the case is remanded for additional proceedings, privileged information will not be used in a manner prejudicial to his interests. The state responds that the circumstances of this case do not justify a protective order and that, in any event, the mandamus relief petitioner seeks is not available to petitioner as a remedy.

Petitioner contends that the breach-of-duty exception to the privilege in OEC 503(4)(c) is no broader than necessary to defend against the claims raised in his petition for post-conviction relief and that, for all other purposes, the protection provided under OEC 503(2) applies.[6] Petitioner argues that the privilege continues to exist for all other purposes and that the post-conviction court's failure to issue an appropriate protective order to protect the privilege constituted legal error.

The state responds that the post-conviction court properly acted within the range of discretionary choices available. Notably, the state concedes that the exception to the lawyer-client privilege provided under OEC 503(4)(c) is limited. The state acknowledges that, if petitioner prevails on his post-conviction claims, petitioner may again assert a privilege to confidential communications disclosed during the post-conviction case and limit their disclosure or use in any future proceedings. In the state's view, the post-conviction court's decision takes that possibility into account

---

[5] The case was consolidated with *Brumwell v. Premo*, 355 Or 543, 326 P3d 1177 (2014) for purposes of oral argument.

[6] Petitioner also identifies four additional sources of authority for the protection of lawyer-client communications, confidences, and secrets: Rule of Professional Conduct (RPC) 1.6; ORS 9.460(3); Article I, section 11, of the Oregon Constitution; and the Sixth Amendment to the United States Constitution. Based on our resolution of the case, we do not find it necessary to address petitioner's additional arguments relating to those sources of authority.

and defers protecting the privilege until any other proceeding is underway.

Thus, the core issue is whether the post-conviction court committed legal error by failing to prevent the disclosure of confidential information. However, we first consider whether mandamus is a proper remedy under the circumstances of this case.

## II. ANALYSIS

### A.  *Mandamus as a remedy*

Mandamus is an extraordinary remedy that may serve only to enforce a known, clear legal right. *State v. Burleson*, 342 Or 697, 701, 160 P3d 624 (2007). By operation of statute, a writ of mandamus "shall not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of law." ORS 34.110; *see also State ex rel. Anderson v. Miller*, 320 Or 316, 324, 882 P2d 1109 (1994) (appeal is generally an adequate remedy for discovery violations because "[m]any pretrial discovery errors do not have systematic implications"); *State ex rel. Hupp etc. Corp. v. Kanzler*, 129 Or 85, 97, 276 P 273 (1929) (an adequate remedy affords "any and all relief to which the petitioner is entitled").

Additionally, although a writ of mandamus may require a court to exercise judgment, "it shall not control judicial discretion." ORS 34.110; *see also State ex rel. Douglas County v. Sanders*, 294 Or 195, 198 n 6, 655 P2d 175 (1982) (mandamus does not lie to compel the exercise of post-conviction court discretion). Mandamus may be appropriate, however, when "the trial court's decision amounts to 'fundamental legal error' or is 'outside the permissible range of discretionary choices'" available. *Lindell v. Kalugin*, 353 Or 338, 347, 297 P3d 1266 (2013) (quoting *State ex rel. Keisling v. Norblad*, 317 Or 615, 623, 860 P2d 241 (1993)).

In seeking the issuance of a peremptory writ in this case, petitioner relies on the reasoning employed in cases when a discovery order has required a party to disclose privileged communications. *See, e.g., State ex rel. OHSU v. Haas*, 325 Or 492, 497, 942 P2d 261 (1997). When concluding that

mandamus may be available in such cases, this court has been persuaded that disclosure of privileged information may cause irreparable injury to a party. As we have explained, "Once a privileged communication has been disclosed, the harm cannot be undone." *Id.* In other words, mandamus may be an appropriate remedy when a discovery violation would require a petitioner to "suffer[] an irretrievable loss of information and tactical advantage which could not be restored to them on direct appeal." *State ex rel. Automotive Emporium v. Murchison,* 289 Or 265, 268-69, 611 P2d 1169, *reh'g den,* 289 Or 673 (1980); *see also Frease v. Glazer,* 330 Or 364, 4 P3d 56 (2000) (writ of mandamus issued directing trial court to vacate order compelling *in camera* review of lawyer's client file).

The state argues that mandamus relief is not appropriate here because petitioner can avoid the admission of privileged material in any future proceedings by asserting his lawyer-client privilege in those proceedings. Petitioner responds that, without an appropriate protective order, the Department of Justice will be free to confer with third parties regarding privileged lawyer-client communications obtained through discovery by operation of the limited breach-of-duty exception under OEC 503(4)(c). Those third parties could include prosecutorial or investigative personnel within Lincoln County. Petitioner argues that, if privileged information is disclosed to such persons, and if petitioner is successful in obtaining post-conviction relief on his claims of ineffective assistance of counsel, the state will have a tactical advantage on retrial because it will have the benefit of confidential communications that it otherwise would not have had. Petitioner further argues that those tactical advantages would be difficult to anticipate and could not be prevented without a protective order.

Petitioner therefore contends that mandamus relief is appropriate because the post-conviction court's order denying his motion for a protective order failed to protect the disclosure of privileged information beyond the limited purposes of a breach-of-duty exception to the lawyer-client privilege. *See State ex rel. N. Pacific Lbr. v. Unis,* 282 Or 457, 579 P2d 1291 (1978) (mandamus relief appropriate where

discovery order erroneously required disclosure of privilege communications). Petitioner argues that, without a protective order, the disclosure of his confidential communications relating to the underlying capital murder charges beyond the confines of the post-conviction proceeding could result in lasting harm to petitioner in future proceedings. *See Haas*, 325 Or at 497.

We agree that, if the post-conviction court had a duty to prevent the disclosure of privileged communications, mandamus would be an appropriate remedy in this case. *See Frease*, 330 Or at 374; *Murchison*, 289 Or at 268-69. We must decide, then, whether the post-conviction court's order failed to prevent the disclosure of privileged communications. We begin by considering the general protection afforded by the lawyer-client privilege as codified in OEC 503.

B.  *Lawyer-client privilege*

As we stated in *Frease*:

"The attorney-client privilege is one of the oldest and most widely recognized evidentiary privileges. *See State v. Jancsek*, 302 Or 270, 274, 730 P2d 14 (1986) (so stating, citing Laird C. Kirkpatrick, *Oregon Evidence*, 146 (1982)); *Upjohn Co. v. United States*, 449 US 383, 389, 101 S Ct 677, 66 L Ed 2d 584 (1981) (same, citing 8 J. Wigmore, *Evidence*, § 2290 (McNaughton rev 1961)). The purpose of the privilege '"is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."' *Haas*, 325 Or at 500 (quoting *Upjohn*, 449 US at 389). However, the attorney-client privilege is not absolute. A client may waive it voluntarily, OEC 511; *Haas*, 325 Or at 498, and OEC 503 creates exceptions to it."

330 Or at 370-71.

The Oregon legislature first codified the common-law lawyer-client privilege in 1862. *See State ex rel. Hardy v. Gleason*, 19 Or 159, 162, 23 P 817 (1890) (recognizing statute as a declaration of the common law lawyer-client privilege). The enactment recognized that "[t]here are particular relations in which it is the policy of the law to encourage

confidence, and to preserve it inviolate." General Laws of Oregon, Civ Code, ch VIII, title III, § 702, p 325 (Deady 1845-1864). The statute therefore prohibited a lawyer from testifying, without the client's consent, "to any communication made by the client to [the attorney], or [the] advice given [by the attorney] thereon, in the course of professional employment." *Id.* at § 702(2). The legislature did not, however, codify any common-law exception to the privilege at that time.

In 1981, the legislature enacted the current version of the evidentiary rule codifying the protection of confidential communications between a lawyer and a client. *See* Or Laws 1981, ch 892, § 32. OEC 503(2) now provides, in part:

> "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:

> "(a)   Between the client or the client's representative and the client's lawyer or a representative of the lawyer;

> "(b)   Between the client's lawyer and the lawyer's representative;

> "(c)   By the client or the client's lawyer to a lawyer representing another in a matter of common interest[.]"

OEC 503(1)(b) defines "confidential communication" as

> "a communication not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."

OEC 503 was modeled after proposed Rule 503 of the Federal Rules of Evidence. OEC 503 Commentary (1981). It was adopted to further codify the common-law lawyer-client privilege as it had existed in Oregon and to extend coverage "to areas in which current law is silent or unclear." *Id.*; *see also State v. Serrano*, 346 Or 311, 324, 210 P3d 892 (2009) (looking to 1981 Conference Committee Commentary as the "principal source of legislative history" for the Oregon Evidence Code).

OEC 503(2) creates a rule of evidence that protects communications made in confidence between specified individuals in furtherance of obtaining and rendering professional legal services. This court has held that application of the lawyer-client privilege in OEC 503(2) hinges on the following three findings:

> "First, the communication must be 'confidential' within the meaning of OEC 503(1)(b). Second, the communication must be made for the purpose of facilitating the rendition of professional legal services to the client. Third, the communication must have been between persons described in one of the paragraphs of OEC 503(2)(a) through (e)."

*Haas*, 325 Or at 501. If a party establishes that a communication falls within those bounds, then the privilege protects the communication from compelled disclosure unless an exception, such as the breach-of-duty exception provided for in OEC 503(4)(c), applies to permit access to the communication.

As previously mentioned, the state concedes that petitioner's confidential communications at issue here may be subject to the protection of OEC 503(2) after the post-conviction proceeding is completed if petitioner obtains a new trial. The state contends, however, that the absolute wording of the preface to OEC 503(4)(c) stating that "[t]here is no privilege under this section" means that the legislature did not intend the privilege to cause any impediment to its ability to access and utilize confidential communications in defending against petitioner's post-conviction claims.

We now turn to OEC 503(4)(c) to further examine the meaning and scope of the breach-of-duty exception to the lawyer-client privilege.

C. *Breach-of-duty exception*

When interpreting a statute, we first examine the text and context of the statute. *See State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) (so stating); *see also Serrano*, 346 Or at 318 (applying *Gaines* analysis to OEC provisions). In enacting OEC 503, the legislature codified, for the first time, a list of common-law exceptions to the lawyer-client privilege. OEC 503(4). The breach-of-duty exception

provided under OEC 503(4)(c), sometimes referred to as the "self-defense exception," is at issue in this case. As previously noted, it states:

"(4)  There is no privilege under this section:

"* * * * *

"(c)  As to a communication relevant to an issue of breach of duty by the lawyer to the client or by the client to the lawyer[.]"

The text of OEC 503(4)(c) stating that "[t]here is no privilege" appears to remove any claim of privilege to confidential communications relevant to an issue of breach of duty falling within the terms of the exception. However, the prefatory language of OEC 503(4)(c) must be read together with the entire rule to understand the meaning and scope of this exception. In its entirety, OEC 503(4)(c) provides that "[t]here is no privilege" as to *a communication relevant to an issue of breach of duty* by the lawyer to the client or by the client to the lawyer." (Emphasis added.) The emphasized phrase—a communication relevant to an issue of breach of duty—modifies the prefatory language and limits the exception to the disclosure of an otherwise confidential communication relevant in a proceeding where a breach-of-duty claim is asserted. The protection of the privilege is not available to a party asserting such a claim under those circumstances. The privilege does apply, however, to a confidential communication to the extent that the communication is not relevant evidence in a proceeding involving breach-of-duty allegations.[7] In other words, the exception is limited to particular proceedings.

We think that the above construction most reasonably and consistently carries out the legislature's general policy of protecting confidential communications between clients and their lawyers. As we have seen, from the earliest codification of the lawyer-client privilege, the legislature expressed a recognition that "[t]here are particular relations in which it is the policy of the law to encourage confidence, and to preserve it inviolate." General Laws of Oregon, Civ

---

[7] The parties do not dispute that appellate counsel's file contains communications "relevant" to the claims alleged in petitioner's petition for post-conviction relief.

Code, ch VIII, title III, § 702, p 325 (Deady 1845-1864). The construction that we adopt here serves to further that legislative policy. *See Holman Tfr. Co. et al. v. Portland et al.,* 196 Or 551, 565, 249 P2d 175 (1952) (where statutory language susceptible of two constructions, court should adopt construction that best carries out the "manifest object" of the statute).

The context surrounding OEC 503(4)(c) also supports an understanding that the breach-of-duty exception should be narrowly construed. Looking to the surrounding provisions, it is notable that the exceptions outlined under OEC 503(4)[8] are distinct from the absolute, voluntary waiver separately defined in OEC 511. *See also* OEC 511 Commentary (1981) (noting that "once confidentiality is destroyed through voluntary disclosure, no subsequent claim of privilege can restore it"); *Alderman v. Davidson,* 326 Or 508, 513, 954 P2d 779 (1998) ("waiver" is the voluntary relinquishment of a known right). By contrast, nothing in OEC 503(4)(c), or the commentary to that provision, suggests that the exception thereby created operates to "destroy" the underlying privilege beyond restriction.

We also observe that our interpretation of OEC 503(4)(c) is consistent with significant policy considerations underlying the right to counsel under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. This court previously has recognized that the lawyer-client privilege serves not only to

---

[8] Additional exceptions provided for under OEC 503(4) are as follows:

"(4) There is no privilege under this section:

"(a) If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud;

"(b) As to a communication relevant to an issue between parties who claim through the same deceased client, regardless of whether the claims are by testate or intestate succession or by inter vivos transaction;

"* * * * *

"(d) As to a communication relevant to an issue concerning an attested document to which the lawyer is an attesting witness; or

"(e) As to a communication relevant to a matter of common interest between two or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between any of the clients."

encourage full and frank communication between lawyers and their clients, but further promotes important interests beyond the interests of represented individuals who assert the privilege. *Haas*, 325 Or at 500 (noting that the lawyer-client privilege promotes "'broader public interests in the observance of law and administration of justice'" (quoting *Upjohn*, 449 US at 389)); *see also id.* at 500 n 6 (the lawyer-client privilege "'bears on the right to effective assistance of counsel. While the benefits of the privilege are commonly understood to focus on the client, it has also been noted that there are advantages to the justice system from fully informed counsel.'" (quoting 3 *Weinstein's Federal Evidence* § 503.03[1] (Matthew Bender 2d ed 1997)). Those recognized interests are furthered by the statutory interpretation of OEC 503(4)(c) that we adopt today.

Our interpretation of OEC 503(4)(c) is also consistent with the recommendations of legal commentators. Such commentators have concluded that, when a client makes formal allegations of breach of duty against his or her lawyer, basic fairness dictates that the lawyer be permitted to prepare a defense against those allegations. However, those commentators have found that the exception permitting a defense "should be construed narrowly to avoid disclosing any more of the client's confidences than are necessary for the lawyer to defend against the client's claim or obtain redress for breach of duty by the client." Laird C. Kirkpatrick, *Oregon Evidence* § 503.12[3] (6th ed 2013); *see also* Edward J. Imwinkelried, *The New Wigmore: Evidentiary Privileges* § 6.13.2, 1147 (2010) (although client's "accusation introduces an adversarial element into the parties› relationship," the accusation "does not completely remove the privilege").

The notion that the self-defense exception codified in OEC 503(4)(c) should be construed narrowly further reflects the common-law view prior to codification of the exception. *See Mitchell v. Bromberger*, 2 Nev 345, 349 (1866) (disclosures limited to those "necessary" to protect the legitimate interests of a lawyer accused of a breach of duty); *see also Greig v. Macy's Northeast, Inc.*, 1 F Supp 2d 397 (D NJ 1998) (same); *Fraidin v. Weitzman*, 93 Md App 168, 611 A2d 1046 (1992) (same); *Farnsworth v. Sanford*, 115 F2d 375

(5th Cir 1940) (same); *Smith v. Guerre*, 159 SW 417 (Tex Civ App 1913) (same); Jennifer Cunningham, *Eliminating "Backdoor" Access to Client Confidences: Restricting the Self-Defense Exception to the Lawyer-client Privilege*, 65 NYU L Rev 992, 1010 (1990) ("As long as proper procedural protections are employed to limit disclosure of confidences to that which is necessary for an attorney's defense, use of the traditional self-defense exception does not impair the policies which underlie the privilege.").[9] Thus, the filing of a breach-of-duty claim has not been generally viewed as removing the privilege entirely.

To summarize: By codifying the common-law lawyer-client privilege, the legislature has given clients "a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications" between clients and their lawyers. OEC 503(2). We construe OEC 503(4)(c) to be a limited exception permitting disclosures of confidential information only as reasonably necessary for a lawyer to defend against allegations of breach of duty.[10] In this post-conviction proceeding, that exception applies only during the pendency of the post-conviction case, including appeal, and only as is reasonably necessary to defend against petitioner's specific allegations of breach of duty. All other confidential communications covered by OEC 503(2) not falling under that exception, or some other exception, are privileged and protected from disclosure.[11]

Finally, with the above understanding in mind, we examine whether the post-conviction court failed to prevent the disclosure of privileged communications.

---

[9] We have uncovered no legislative history suggesting that the legislature, when it codified OEC 503(4)(c), intended to modify the common-law approach that the breach-of-duty exception was limited to disclosures of confidential communications that were necessary to protect the legitimate interests of a lawyer accused of a breach of duty.

[10] We make this determination in the context of a discovery dispute. We therefore express no opinion as to whether such a communication is protected by OEC 503(2) after it is admitted into evidence.

[11] We do not, of course, express any opinion as to what bearing our holding has in a federal habeas proceeding filed pursuant to 28 USC § 2254. We note, however, that the Ninth Circuit has held that the scope of a habeas petitioner's waiver arising from a claim of ineffective counsel extends to only the litigation of the federal habeas petition. *Bittaker v. Woodford*, 331 F3d 715 (9th Cir), *cert den*, 540 US 1013 (2003).

## D. *Application*

Petitioner moved for a protective order under ORCP 36 C, a general provision authorizing courts to issue orders limiting the extent of disclosure of information under appropriate circumstances. Petitioner acknowledged the breach-of-duty exception of OEC 503(4)(c) and did not object to the state's motion to compel petitioner to produce documents from his appellate counsel's file for use in the post-conviction proceeding. Rather, petitioner's motion for a protective order was an attempt to prevent the disclosure of confidential information protected by OEC 503(2) that did not fall within the limited exception provided for in OEC 503(4)(c).

Specifically, petitioner's motion fairly addressed three categories of disclosure: (1) disclosures of confidential communications by the state or its representatives during the course of the post-conviction proceeding to third persons with no connection to the preparation of a defense to any breach-of-duty allegations; (2) disclosures of such communications to anyone after the completion of the proceeding; and (3) disclosures to third persons during the proceeding for the purpose of preparing a defense to breach-of-duty allegations. The first two categories of disclosures are not necessary for the preparation of the state's defense and, thus, do not fall within the limited exception of OEC 503(4)(c). Whether a particular disclosure falls within the third category will depend on the factual circumstances and allegations presented in each case.

Finally, the state argues that a protective order could unfairly interfere with preparing a defense to petitioner's claims. But that argument fails to distinguish between the disclosure of material to third parties for purposes of defending the breach-of-duty claims and disclosure of materials to third parties who have no relationship whatsoever to the post-conviction proceeding. A post-conviction court can properly permit disclosures to third parties for purposes of preparing a defense to breach-of-duty claims and, at the same time, prohibit unnecessary disclosures beyond the confines of the post-conviction proceeding.

We conclude that petitioner had a privilege to prevent the disclosure of confidential communications in this

matter under OEC 503(2), to the extent that those communications did not fall under the breach-of-duty exception of OEC 503(4)(c). Therefore, the post-conviction court had a legal duty to prevent the disclosure of those communications not reasonably necessary to serve the limited purposes of that exception. Because petitioner moved to prevent the disclosure of privileged information not reasonably necessary to a defense, the post-conviction court did not have discretion to fail to protect that information. Thus, the post-conviction court's order denying petitioner's motion constituted legal error. *See State ex rel. Johnson v. Richardson*, 276 Or 325, 555 P2d 202 (1976) (trial judge had no discretion to deny state's motion to require defendant to answer questions of state's psychiatrist when mental defect asserted as defense).

Here, the post-conviction court's denial of petitioner's motion means that nothing prevents the disclosure of confidential communications without limitation to third persons unrelated to the preparation of a defense in this post-conviction proceeding. Nor is there anything preventing the disclosure of confidential communications even after the completion of that proceeding. Under OEC 503(2) and ORCP 36 C, a protective order was appropriate to prohibit those disclosures not reasonably necessary for the preparation of a defense. Under OEC 503(4)(c), however, the lawyer-client privilege must give way with respect to disclosures to third persons during the pendency of the proceeding for the purpose of preparing a defense to breach-of-duty allegations. In the context of this post-conviction proceeding, the post-conviction court must exercise its discretion to determine whether to permit disclosures under this category based on the factual circumstances and the specific allegations of breach of duty. We therefore leave it to the post-conviction court to determine the appropriate terms of a protective order in this case.

We express no opinion as to whether the procedures requested by petitioner in his proposed form of protective order are required to adequately protect his lawyer-client privilege. The post-conviction court, in the exercise of its discretion, may determine what disclosures are reasonably necessary for the purposes of a defense and what procedures

are appropriate. This may or may not include allowing the state to disclose otherwise privileged documents to law enforcement officials depending on whether it is reasonably necessary for a defense. Indeed, it may not always be feasible to fully guard against all such disclosures when disclosure is reasonably necessary for the state to prepare a defense.

We recognize that decision-making by a post-conviction court in such instances may often be difficult and include close calls. For example, the post-conviction court may be required to determine when it is permissible for the state to share disclosed information with prosecutors previously involved in petitioner's prosecution who may be involved again at a retrial. Both the state's interest in preparing a defense against petitioner's allegations of breach of duty and petitioner's interest in protecting the unnecessary disclosure of confidential communications must be enforced under OEC 503(2) and OEC 503(4)(c). Again, we leave such determinations to the sound exercise of the post-conviction court's discretion based on the circumstances presented, so long as both provisions are enforced.

## III.   CONCLUSION

Because the post-conviction court failed to protect against the disclosure of privileged communications and committed legal error, mandamus is an appropriate remedy in this case. With disclosure of such information, petitioner would "suffer[] an irretrievable loss of information and tactical advantage which could not be restored to [him] on direct appeal." *Murchison*, 289 Or at 269; *see also Richardson*, 276 Or 325 (mandamus appropriate remedy when trial judge had no discretion to deny state's motion to require defendant to answer questions of state psychiatrist). We therefore direct the issuance of a peremptory writ of mandamus requiring the post-conviction court to vacate its order and issue a protective order.

Peremptory writ of mandamus to issue.