Argued and submitted July 12, 2017, appeal dismissed as moot March 4, petition for review denied June 18, 2020 (366 Or 569)

## MARTIN ALLEN JOHNSON,
*Plaintiff-Appellant,*

*v.*

## Jeff PREMO,
Superintendent,
Oregon State Penitentiary,
*Defendant-Respondent.*

### Marion County Circuit Court
06C16178; A160579

461 P3d 985

Petitioner appeals the denial of a post-judgment motion for a protective order under ORCP 36 C to limit the use of privileged information revealed during his post-conviction-relief case. Petitioner filed that motion two years after the post-conviction court awarded him relief in the form of a new trial due to the inadequate assistance of counsel that petitioner received in his underlying criminal case. That new trial has concluded, resulting in a conviction. On appeal, petitioner contends that the issuance of a protective order could have significant bearing in future litigation. *Held*: The Court of Appeals, in an exercise of its ongoing obligation to evaluate the justiciability of an appeal, dismissed this case as moot. The privileged status of attorney-client communications is not dependent upon the issuance of a protective order, and petitioner did not waive that privilege in post-conviction-related discovery. Petitioner failed to identify practical effects or collateral consequences that could flow from the post-conviction court's denial of his motion for a protective order.

Appeal dismissed as moot.

Thomas M. Hart, Judge.

Daniel J. Casey argued the cause for appellant. With him on the opening and reply briefs was Robert L. Huggins, Jr. Martin Allen Johnson filed the supplemental brief *pro se*.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Dustin Buehler, Assistant Attorney General.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge.*

_____

* Aoyagi, J., *vice* Wollheim, S. J.

DeHOOG, P. J.

Appeal dismissed as moot.

**DeHOOG, P. J.**

When a post-conviction petitioner raises claims of inadequate assistance of counsel, the attorney-client privilege gives way, permitting disclosure of privileged communications that are "relevant to an issue of breach of duty by the lawyer * * * to the client." OEC 503(4)(c).[1] That exception is narrow, however, and, as relevant here, it "applies only during the pendency of the post-conviction case, including appeal, and only as is reasonably necessary to defend against petitioner's specific allegations of breach of duty." *Longo v. Premo*, 355 Or 525, 539, 326 P3d 1152 (2014). Petitioner's appeal invites us to explore the contours of that rule, but, as we explain below, we conclude that his appeal is moot. Accordingly, we dismiss petitioner's appeal.

Petitioner appeals the denial of a post-judgment motion for a protective order that he made after the post-conviction court had awarded him relief in the form of a new trial in his underlying criminal case. The post-conviction court ordered that relief in 2013. Petitioner filed the post-judgment motion at issue here two years later, in 2015. The original post-conviction judgment granting petitioner a new trial has since been affirmed on appeal. *See Johnson v. Premo*, 361 Or 688, 399 P3d 431 (2017) (concluding that petitioner was entitled to a new trial on criminal charges due to ineffective assistance by his trial counsel).

The substance of petitioner's claim in the present case is that the post-conviction court erred in denying his post-trial request for, among other things, various forms of relief based upon his understanding of the Supreme Court's decisions in *Longo* and in *Brumwell v. Premo*, 355 Or 543, 326 P3d 1177 (2014), both of which addressed the issue of discovery-related pre-trial protective orders in post-conviction proceedings. Because his motion, like those of the petitioners in *Longo* and *Brumwell*, sought to limit the state's use of discovery materials and other materials he asserts are subject to the attorney-client privilege, petitioner contends that the holdings of those cases control here.

---

[1] OEC 503(4)(c) has been amended since the relevant events in this appeal occurred; however, because those amendments do not affect our analysis, we refer to the current version of the statute in this opinion.

We need not decide that issue, however, because of our ultimate conclusion that petitioner's appeal is moot. That conclusion follows from our ongoing duty to evaluate the justiciability of petitioner's appeal. As in all cases, before deciding the merits of petitioner's appellate arguments, we must consider whether any jurisdictional impediments preclude us from reaching them. *See Walton v. Board of Parole*, 267 Or App 673, 676, 341 P3d 828 (2014) (noting appellate court's "independent obligation to consider matters concerning jurisdiction *sua sponte*"). The superintendent has identified one potential impediment, questioning whether the post-conviction court's denial of petitioner's post-judgment motion is an appealable order. We, however, have identified a second potential impediment: Events occurring since petitioner filed his appeal appear to have rendered his appeal moot. For the reasons that follow, we focus on the latter concern, ultimately concluding that petitioner's case no longer presents a justiciable controversy, now that the new trial that the post-conviction court awarded him as relief has concluded. That conclusion renders it unnecessary to further consider the appealability of the challenged order, or, for the most part, the substance of petitioner's appellate argument. We therefore dismiss this case as moot.

In order to explain that disposition, some background on this case and petitioner's first criminal trial is required.[2] Petitioner was convicted of aggravated murder based on the 1998 killing of a 15-year-old girl, and his conviction and sentence of death were affirmed on direct appeal. *State v. Johnson*, 340 Or 319, 131 P3d 173, *cert den,* 549 US 1079 (2006). The state's theory of the case was that petitioner had given the victim morphine and subjected her to sexual intercourse, after which he had strangled her to death and had thrown her body off a bridge in Clatsop County. *Johnson v. Premo*, 361 Or at 690-92. The defense's theory of the case was that the victim had been alive when petitioner threw her off the bridge; counsel supported that

---

[2] The procedural history of this case on appeal is extremely complex and involves dozens of motions. We do not describe that procedural history in detail as it is unnecessary to our resolution of this matter.

theory by presenting expert testimony that the victim's death had resulted from drowning. *Id.* at 690.[3]

      In this post-conviction proceeding, which petitioner initiated in 2006, he argued that he had received inadequate assistance of counsel because defense counsel had failed to investigate and develop a defense theory that the victim had died of a morphine overdose *before* he threw her off the bridge; relatedly, petitioner claimed, counsel had performed deficiently in failing to provide expert testimony to support such a theory. *Id.* at 693-95.[4] Petitioner first requested a protective order for attorney-client privileged materials in September 2009, prior to disclosing those materials in pretrial discovery. Relying on ORCP 36 C,[5] petitioner requested a "protective order limiting the use of privileged information revealed during discovery herein to petitioner's pending post-conviction relief case." The post-conviction court denied the protective order.[6] Notably, the post-conviction court issued that ruling well before the Supreme Court had decided *Longo* and *Brumwell*, and therefore well before their rulings indicating that a pretrial order limiting the state's redisclosure of attorney-client privileged materials

---

[3] Counsel's defense strategy was at least theoretically viable because, at that time, venue was considered an element of a criminal offense, *see generally State v. Mills*, 354 Or 350, 312 P3d 515 (2013) (discussing history); accordingly, counsel argued that the murder had occurred in Clatsop County rather than Washington County where the case was being tried. *Johnson v. Premo*, 361 Or at 693. Notwithstanding the theoretical plausibility of that argument, the Supreme Court described counsel's chosen strategy as "improbable" when affirming the post-conviction court's determination that petitioner had received inadequate assistance of counsel, noting that "a venue defense provided no reasonable prospect for acquittal" and "had the significant drawback of essentially acknowledging that petitioner had committed aggravated murder, and had done so in a particularly callous manner by throwing a youth whom he had sexually assaulted off a bridge." *Id.* at 706, 710.

[4] The court observed that that theory would not have been a "strong" defense that would have supported an acquittal, but could have supported an argument that this was a lesser crime than aggravated murder and "had the potential to remove the death penalty from the equation." *Johnson v. Premo*, 361 Or at 706-07.

[5] ORCP 36 C permits a trial court to, for good cause, restrict the use of materials obtained in discovery during the course of proceedings before it in order "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense."

[6] Petitioner sought a writ of mandamus in the Oregon Supreme Court challenging the trial court's denial of his motion, which the court denied in 2010. *Johnson v. Belleque* (S058087).

obtained in discovery may be warranted in post-conviction proceedings.

In April 2013, at the conclusion of petitioner's post-conviction trial, the court granted him relief from his convictions, concluding that he had received inadequate assistance of counsel in various respects. The state appealed from the judgment, and petitioner cross-appealed, assigning error to the post-conviction court's conclusion that he had not proven his other claims for relief. Petitioner did not assign error to the denial of his pretrial motion for an ORCP 36 C protective order.

While the appeal from the merits judgment was pending before us, the Supreme Court issued *Longo* and *Brumwell*. Thereafter—as noted above, two years *after* the post-conviction court had granted him relief—petitioner filed the *pro se* motion at issue here. Citing *Longo* and *Brumwell*, petitioner sought, among other things, a protective order for "any and all" materials protected by the attorney-client privilege in this case. Petitioner's motion did not identify specific discovery materials to which the privilege applied but asked for a protective order covering "PCR legal materials," which petitioner evidently viewed as including, among other things, testimony and exhibits in the post-conviction proceeding, as well as trial court and appellate court opinions in the case. Although not clearly stated, petitioner's motion can be understood to ask for relief that encompassed restrictions on all of the following: the state's disclosure, to witnesses in preparation for a retrial on the criminal charges, of materials it had received in the course of the post-conviction proceedings; the state's reliance on those materials in identifying trial witnesses and preparing their testimony at retrial; and the state's review or other reliance on those materials in anticipating who may testify on petitioner's behalf and in preparing to cross-examine or rebut that anticipated testimony on retrial. The motion can further be understood to request that the post-conviction court appoint counsel from the Attorney General's office to provide advice and assistance to defense counsel and the Washington County District Attorney's office on retrial to ensure compliance with those restrictions and otherwise prevent the use of attorney-client privileged information in

the course of his retrial. The post-conviction court denied petitioner's post-judgment motion as "untimely, abusive, repetitive, and not within the jurisdiction" of the post-conviction court. This appeal ensued.

During the pendency of this appeal and after the Supreme Court had affirmed the post-conviction court's grant of a new trial, retrial proceedings on the criminal charges against petitioner commenced in Washington County Circuit Court; those proceedings are discussed in greater detail below. In light of those proceedings, we asked the parties to submit memoranda addressing whether this case has become moot, given the nature of petitioner's claims for relief. Both petitioner and the superintendent have responded that we should not focus on the specifics of what petitioner requested in his *pro se* motion, but instead on what he asks for on appeal, which both parties liken to a protective order of the sort at issue in *Longo* and *Brumwell*. But, as we explain below, those cases arose in a much different procedural context than the present case; thus, in our view, the parties' focus is misdirected.

We pause at this point to recap *Longo* and *Brumwell*, as the differences between those cases and this one are significant to our disposition here. Both *Longo* and *Brumwell* were mandamus cases involving interlocutory appeals at the discovery stage in post-conviction proceedings; in each case, the post-conviction court had been asked to issue a protective order pursuant to ORCP 36 C with respect to materials to be disclosed in discovery, in order to prevent the state's attorney who was defending the case "from disclosing such information to third parties unrelated to the post-conviction case." *Longo*, 355 Or at 527; *see also Brumwell*, 355 Or at 545 (same). The underlying principle in each of those cases was that, although OEC 503(4)(c) provides a limited exception to the attorney-client privilege, which permits the disclosure of confidential information to the extent reasonably necessary to defend against allegations of breach of duty, that exception is limited in scope and duration to the breach of duty claim. *Longo*, 355 Or at 537-39; *Brumwell*, 355 Or at 548. Thus, a party that discloses attorney-client materials in discovery pursuant to the exception has not *waived* the

attorney-client privilege with respect to the disclosed materials. *Longo*, 355 Or at 537-39.

In determining the significance of those cases here, we focus on several key aspects of the court's decision in *Longo,* which was the lead case of the two. There, the post-conviction court had been asked, during the discovery phase of the proceeding, to issue a protective order "requiring that any privileged information produced through discovery be used solely for the purpose of litigating the claims presented in his petition for post-conviction relief." *Id.* at 528. The petitioner had specifically requested that any material that he provided in discovery (and that he believed to be privileged) be provided under seal and designated as confidential. *Id.* at 528 n 4. The post-conviction court had declined to issue an order to that effect, concluding that it was unnecessary because any attorney-client privileged information discovered during the post-conviction proceeding "can only be used in this proceeding and would not be usable subsequently in any other matter because the privilege would resurface." *Id.* at 529 (internal quotation marks omitted). The Supreme Court did not disagree with that understanding of the privilege. *Id.* at 532. The court did, however, disagree that the petitioner was not entitled to protective measures at the discovery phase of the post-conviction trial, because, as the petitioner had argued, without a protective order, the state's attorneys who received the privileged materials in discovery might confer with third parties who, in turn, might be able to use the materials against the petitioner in the event of a retrial. *Id.* The court reasoned that the exception to the privilege applicable in post-conviction proceedings is "a limited exception permitting disclosures of confidential information only as reasonably necessary for a lawyer to defend against allegations of breach of duty"; one that "applies only during the pendency of the post-conviction case, including appeal, and only as is reasonably necessary to defend against petitioner's specific allegations of breach of duty." *Id.* at 539. It therefore disagreed with the post-conviction court that an order in the discovery phase of the post-conviction proceeding was not appropriate:

> "We conclude that petitioner had a privilege to prevent the disclosure of confidential communications in this matter

under OEC 503(2), *to the extent that those communications did not fall under the breach-of-duty exception* of OEC 503 (4)(c). Therefore, *the post-conviction court had a legal duty to prevent the disclosure of those communications not reasonably necessary to serve the limited purposes of that exception.* Because petitioner moved to prevent the disclosure of privileged information *not* reasonably necessary to a defense, the post-conviction court did not have discretion to fail to protect that information. Thus, the post-conviction court's order denying petitioner's motion constituted legal error."

*Id.* at 540-41 (emphasis added). That is, the holding in *Longo* was limited to privileged discovery materials that had been provided to the defense, but that ultimately were not necessary to the defense. *See also id.* at 539 n 10 ("We make this determination in the context of a discovery dispute. We therefore express no opinion as to whether such a communication is protected by OEC 503(2) *after* it is admitted into evidence." (Emphasis added.)); *id.* at 541 (stating that "a protective order was appropriate to prohibit those disclosures not reasonably necessary for the preparation of a defense"). Protection of *that* information, the court concluded, was not discretionary. *Id.* The court went on to note, however, that the post-conviction court did have discretion about whether and to what extent it should craft protections as to privileged information that was pertinent to "the specific allegations of breach of duty." *Id.*

Even though petitioner's post-judgment motion was based on the same principles as those enunciated in *Longo*, the circumstances of his motion were measurably different. As the Supreme Court made clear in *Longo*, that case concerned an order to be issued "in the context of a discovery dispute"—the court explicitly expressed no opinion as to whether privileged materials necessary to the defense of a petitioner's claim would be protected after having been entered into evidence. *Id.* at 539 n 10. Stated differently, the materials that *Longo* held the post-conviction court must protect were not materials already in the post-conviction court record, but, rather, materials that had been provided in the course of discovery but that ultimately were not relevant to the post-conviction petitioner's inadequate-assistance-of-counsel claim. *Id.* at 540-41. We emphasize

those circumstances not because we must determine whether petitioner is correct, that some or all of the materials that he has identified are protected by the attorney-client privilege, but to show that the remedy addressed in *Longo* pertained to a narrow set of circumstances not present here. At issue in *Longo* was what a post-conviction court may or even must do to protect information provided during post-conviction-related discovery, when it remains to be determined whether the materials produced are relevant to the defense of the post-conviction claim and therefore fall within OEC 503 (4)(c)'s limited exception to the attorney-client privilege. *See id.* at 541-42 ("The post-conviction court, in the exercise of its discretion, may determine what disclosures are reasonably necessary for the purposes of a defense and what procedures are appropriate.").

At issue in this case, on the other hand, is whether the post-conviction court was required to issue a protective order covering attorney-client materials that had already been disclosed in discovery, and whose relevance to the defense of petitioner's claims had, presumably, already been determined. That is, because the post-conviction trial had long been concluded, it had already been established, at least implicitly, which of the materials disclosed in discovery were relevant to the defense of the post-conviction claim, as that defense had concluded (in petitioner's favor) and the post-conviction record was closed. Whatever materials were disclosed to the defense during discovery—which, of course, are not, as such, a part of the post-conviction trial record—were disclosed a decade ago. And, under *Longo*, to the extent that the discovery materials included matters subject to the attorney-client privilege, the mere act of disclosure had not waived that privilege. As the court noted in *Longo*, the exception to the attorney-client privilege in the context of post-conviction proceedings "applies only during the pendency of the post-conviction case, including appeal, and only as is reasonably necessary to defend against petitioner's specific allegations of breach of duty." *Id.* at 539.

That returns us to the issue of justiciability, and, in particular, whether this case is moot. A case becomes moot when "a court's decision no longer will have a practical effect on or concerning the rights of the parties." *Brumnett*

*v. PSRB*, 315 Or 402, 406, 848 P2d 1194 (1993); *see also State v. Hemenway*, 353 Or 498, 501, 302 P3d 413 (2013) ("If, because of changed circumstances, a decision no longer will have a practical effect on or concerning the rights of the parties, the case is moot and will be dismissed." (Internal quotation marks omitted.)); *Hamel v. Johnson*, 330 Or 180, 184, 998 P2d 661 (2000) ("[A] case becomes moot when an event occurs that renders it impossible for the court to grant effectual relief." (Internal quotation marks omitted.)).

An order of the sort at issue in *Longo* and *Brumwell*—an ORCP 36 C order by a court "in which the action is pending" that provides that discovery be had "on specified terms and conditions"—expressly contemplates the issuance of an order before disclosures are made. It is far from evident that such an ORCP 36 order can issue *after* discovery—indeed, after trial—is complete, and petitioner has cited no authority indicating that it can. We recognize that ORS 138.520 provides that a post-conviction court that has granted relief "may also make supplementary orders to the relief granted, concerning such matters as rearra[ign]-ment, retrial, custody and release on security." And, to the extent that petitioner's motion in this case can be viewed as a request for a post-trial order concerning his retrial under ORS 138.520, it might, as a theoretical matter, be possible for a post-conviction court to enter an order limiting the use on retrial of privileged materials that were obtained in the course of the post-conviction proceeding; while not the same as the orders at issue in *Longo* and *Brumwell*, such an order would, at least in principle, be consistent with the holdings of those cases. However, the fact remains that, in this case, petitioner's retrial has already occurred. Given that circumstance, it is difficult to envision how the relief sought on appeal—the issuance of a post-trial protective order concerning the use of pretrial discovery—can be characterized as supplementary relief concerning his retrial.

As noted, when petitioner's retrial commenced in circuit court, we sought the parties' assistance with those issues, particularly as they might relate to mootness. In response, petitioner informed us that, before petitioner's retrial commenced, his defense attorney, citing *Longo* and

*Brumwell*, filed a motion asking the trial court (1) to "'inquire of the prosecutors the extent, if any, of their exposure to [petitioner]'s privileged communications disclosed in the post-conviction process related to the present case,'" and (2) to issue an order prohibiting the prosecutors from accessing privileged communications disclosed in the post-conviction proceeding in the future. (Brackets in original.) The trial court made the requested inquiry, and, in response, both prosecutors indicated that the only materials from the post-conviction case to which they had been exposed were the judicial opinions, as they had avoided exposure to any other materials. Based on those representations, the trial court declined to enter petitioner's requested order. Petitioner's retrial proceeded in November 2019, resulting in a jury verdict of guilty on charges of first-degree murder and a sentence of life in prison without the possibility of parole.

In the superintendent's view, petitioner's retrial has rendered petitioner's appeal moot. Petitioner disagrees. He contends that the issuance of an order concerning the privileged materials created in the course of his first criminal trial could be important to future litigation. "Whether a case has become moot will depend on a factual determination regarding the potential impact of the court's decision on the parties." *Garges v. Premo*, 362 Or 797, 421 P3d 345 (2018). If the party arguing against mootness "can identify 'practical effects or collateral consequences'" that flow from the underlying challenged decision, then the party advocating mootness must show that the effects and consequences identified are either "'legally insufficient or factually incorrect.'" *Id.* at 802 (quoting *Dept. of Human Services v. A. B.*, 362 Or 412, 426, 412 P3d 1169 (2018)). Here, as explained below, we conclude that petitioner has not identified any practical effect or collateral consequence of the sort that our or the Supreme Court's case law has recognized.

In asserting that the post-conviction court's denial of the requested post-trial order has practical effects or collateral consequences, petitioner contends that, even accepting as true the prosecutors' statements to the court retrying his case, that is, that they had had no access to petitioner's privileged attorney-client communications,

> "that does not account for the entirety of the trial-court
> record and what may have occurred after those represen-
> tations were made. If, on direct appeal, petitioner is able
> to show from the entire trial-court record that the state
> used such otherwise privileged communications to con-
> vict him a second time, he would not be able to challenge
> that conviction *based on the breach of the* Longo/Brumwell
> *protective-order* to which he is entitled, for the simple rea-
> son that no such protective order was ever entered either
> in the post-conviction case or in the criminal-retrial case."

(Emphases in original and footnote omitted; emphasis
added.) That proposition, however, is incorrect, at least inso-
far as it suggests that, if the state used privileged commu-
nications to convict him on retrial, he will have no remedy.
That proposition is based on a misunderstanding of the
scope of the attorney-client privilege (and the narrow scope
of the breach-of-duty exception to that privilege) that the
court discussed in *Longo*.

    As we understand petitioner's argument, it appears
to take as its premise that the *only* way that he can pre-
vent the state from later using against him privileged
materials obtained in the post-conviction proceeding is
a so-called *Longo/Brumwell* protective order. From that
premise, petitioner reasons that he will have no recourse if
he subsequently discovers that the state has used attorney-
client privileged information in the course of retrying
him. But, because petitioner's premise is flawed, so is his
conclusion.

    The privileged status of attorney-client communi-
cations is not dependent upon the issuance of a protective
order, and, to the extent that privileged materials were dis-
closed in post-conviction-related discovery, the mere disclo-
sure of them did not waive that privilege. As explained at
some length above, the *Longo* court made quite clear that
the limited exception to the attorney-client privilege in the
context of post-conviction breach-of-duty claims "applies
*only* during the pendency of the post-conviction case, includ-
ing appeal, and only as is reasonably necessary to defend
against petitioner's specific allegations of breach of duty."
355 Or at 539 (emphasis added). Thus, if the state did, in
fact, use attorney-client privileged information in securing

a new conviction, the issuance or nonissuance of a *Longo/Brumwell* order has no bearing on petitioner's ability to pursue a claim to that effect on direct appeal of that conviction or, if necessary, in future collateral proceedings challenging his new convictions. The privilege exists—and can, presumably, be enforced—because petitioner has not waived it; it does not depend on the issuance of an order recognizing the existence of the privilege.[7] We emphasize that *Longo* and *Brumwell* held that a prophylactic remedy in advance of providing discovery is appropriate in post-conviction cases to protect against dissemination of attorney-client privileged materials to third parties. Those cases did not, however, suggest that this was the sole remedy that was available to protect attorney-client information disclosed in the course of a post-conviction proceeding, or that the state's misuse of such materials at a later date would be permissible in the absence of a discovery protective order. And, because petitioner has not meaningfully argued that that remedy would not be available in a direct appeal of his new conviction, we conclude that he has not, on that basis, identified a "practical effect" that flows from the post-conviction court's denial of his motion for a protective order.

Petitioner also asserts that the impermissible use of attorney-client privileged materials from this post-conviction proceeding could infect future post-conviction and habeas corpus cases in which he will challenge his new convictions; he argues that a protective order should therefore either extend through direct appeal, post-conviction and habeas corpus proceedings concerning his new trial, or, alternatively, should remain in effect indefinitely. That is so, he asserts, "because such privilege continues to exist even after the conclusion of the criminal retrial." But, even accepting that last point as true, our discussion above demonstrates that the continued existence of the privilege is in no way dependent on whether a much-belated discovery protective order was, is, or should have been entered long after trial in a prior post-conviction proceeding or, for that matter well after a retrial has occurred. So, again, petitioner has

_____

[7] Nor would the existence of such an order entered after a retrial provide any basis for arguing that the state violated the not-yet-existing order in the course of the retrial.

not demonstrated any practical effect.[8] And, to the extent that petitioner is arguing that use of privileged materials in future proceedings is a "collateral consequence" to denial of his motion, we reject that argument as well because, as with his practical-effect argument, petitioner fails to understand that his ability to curtail or remedy the state's misuse of privileged information will not be abridged by the lack of such a protective order.

Moreover, in order to prevent a case from being considered moot, a "collateral consequence" must be something beyond mere speculation. *See, e.g.*, *Brumnett*, 315 Or at 407 ("mere possibility" that the state might at some point in the future seek repayment for hospital services provided to the petitioner did not prevent his challenge to the Psychiatric Security Review Board's jurisdiction over him from being moot, where he had been granted unconditional release). As we have observed, a collateral consequence "must have a significant probability of actually occurring; a speculative or merely possible effect is not enough." *Oregon School Activities v. Board of Education*, 244 Or App 506, 510, 260 P3d 735 (2011). Nothing in this case, or in the state's arguments made to the Supreme Court in the *Longo* or *Brumwell* cases, indicates that the state makes a practice of using attorney-client privileged materials in violation of the strictures of OEC 503. *See, e.g.*, *Longo*, 355 Or at 530 ("The state acknowledges that, if petitioner prevails on his post-conviction claims, petitioner may again assert a privilege to confidential communications disclosed during the post-conviction case and limit their disclosure or use in any future proceedings."). It would be purely speculative to assume that, in the absence of an order specifically stating that privileged materials are privileged, there is a significant probability that the state will use such materials in a manner that does not comport with the attorney-client privilege set forth in OEC 503.

In sum, petitioner has not waived his attorney-client privilege with respect to material he provided in discovery

---

[8] We also note that it would be speculative to assume that post-conviction proceedings concerning petitioner's retrial would involve issues surrounding attorney-client privileged communications that occurred between petitioner and attorneys that had represented him in the earlier proceeding.

in the post-conviction proceeding. Should it be demonstrated that the state made use of attorney-client privileged information on petitioner's retrial, or should the state attempt to make use of attorney-client privileged materials in prosecuting or defending cases involving petitioner in the future, petitioner's ability to prevent the state from doing so will not be affected by the lack of a post-trial protective order in this post-conviction case enunciating such a right. Because petitioner has identified no practical effect or collateral consequence that could flow from the post-conviction court's denial of his post-trial motion for a protective order, we conclude that his appeal is moot.[9]

Appeal dismissed as moot.

---

[9] As noted, our conclusion that petitioner's appeal is moot renders it unnecessary to further consider the superintendent's argument that the post-conviction court's denial of petitioner's post-judgment motion is not an appealable order.