Argued and submitted September 23, a peremptory writ of mandamus shall issue November 10, 2022

I. H.,
*Petitioner-Relator,*

*v.*

Azzdine Yahya AMMI,
*Respondent-Adverse Party.*

(CC 21PO10337) (SC S069072)

520 P3d 877

In a proceeding under the Family Abuse Prevention Act, the trial court applied the exception to the certified advocate-victim privilege set out in OEC 507-1(3) to communications between relator and her advocate. The court issued an order compelling production of a memory card containing videos of those communications, as well as all other advocate-victim communications, and relator challenged that order by petitioning for a writ of mandamus. *Held*: (1) The trial court erred in applying the exception to the certified advocate-victim privilege; and (2) the trial court's order compelling production of the entire memory card was unsupported and outside the permissible range of discretionary choices available.

A peremptory writ of mandamus shall issue.

En Banc

Original proceeding in mandamus.*

Bernadette E. Valdellon, Legal Aid Services of Oregon, Portland, argued the cause and filed the briefs for petitioner-relator. Also on the briefs were Emily Brown-Sitnick, Portland, and Emily Rena-Dozier, Oregon Law Center, Portland.

Christopher Cauble, Cauble & Whittington, LLP, Grants Pass, argued the cause and filed the brief for respondent-adverse party. Also on the brief was Leigh Shepley Miranda, Grants Pass.

Matthew J. Mertens, Perkins Coie LLP, Portland, filed the brief for *amici curiae* Victim Rights Law Center, Oregon Coalition Against Domestic and Sexual Violence, Oregon

_____
* On petition for alternative writ of mandamus from an order of the Washington County Circuit Court, D. Charles Bailey, Judge.

Attorney General's Sexual Assault Task Force, National Crime Victim Law Institute, and Oregon Crime Victims Legal Center. Also on the brief were Julia E. Markley, Bryan D. Beel, and Jessica Mindlin, Victim Rights Law Center, Portland.

BALMER, J.

A peremptory writ of mandamus shall issue.

**BALMER, J.**

This original mandamus proceeding involves the scope and application of the certified advocate-victim privilege, OEC 507-1.

Relator petitioned for a restraining order against her husband (respondent) under the Family Abuse Prevention Act (FAPA), ORS 107.700 - 107.735. During a hearing on her petition, relator offered as exhibits six videos from a dash-mounted camera in the parties' car in connection with an alleged incident of abuse. One of the videos showed relator speaking on a cell phone to a "certified advocate," who is someone trained to support victims of certain kinds of violence and harassment. *See* OEC 507-1(1)(a) (defining "certified advocate" as someone who has "completed at least 40 hours of training in advocacy for victims of domestic violence, sexual assault or stalking, approved by the Attorney General by rule," and is "an employee or a volunteer of a qualified victim services program"). That video exhibit was offered to support relator's testimony about her fear for her physical safety. Relator also indicated that she had sometimes texted that advocate. Respondent requested production of the entire memory card from the dash-mounted camera, as well as "[a]ll correspondence, memoranda, e-mail, text messages, recordings of any kind, and any other documents from any advocate assisting [relator] in this case to [relator] or from [relator to her] advocate relating to the alleged events in this case."

Relator refused to produce those items. She argued, as relevant here, that respondent's request for the entire memory card violated ORCP 36 because it was oppressive, overly broad, and unduly burdensome, and was not "reasonably calculated to lead to the discovery of admissible evidence." Relator also argued that her communications with her certified advocate were privileged under OEC 507-1.

On respondent's motion, the trial court issued an order compelling production of those items. The court's stated reason for the order read, in its entirety: "FAPA hearings can lead to loss of liberty and Constitutional Freedoms. Pre-trial discovery is a must."

Relator petitioned this court for a writ of mandamus seeking to vacate the trial court's discovery order, and concurrently moved for a stay of that order in the trial court. The trial court denied the stay, citing OEC 507-1(3), which limits the applicability of the certified advocate-victim privilege in certain circumstances. Relator continued to refuse to produce the memory card and her communications with her advocate, and, on respondent's motion, the trial court dismissed the FAPA proceeding as a sanction.

This court granted relator's mandamus petition, issued a peremptory writ directing the trial court to vacate its order dismissing the FAPA proceeding, and issued an alternative writ directing the court to vacate its order compelling production or to show cause for not doing so. The court vacated its order of dismissal and stayed the proceedings, but it did not vacate its order compelling production.

We are presented with two questions. The first is whether and to what extent the certified advocate-victim privilege applies in this case. The second is whether the request for production of the entire memory card violated ORCP 36 C, such that the order compelling production was an abuse of discretion by the trial court. *See Longo v. Premo*, 355 Or 525, 531, 326 P3d 1152 (2014) ("Mandamus may be appropriate *** when the trial court's decision amounts to fundamental legal error or is outside the permissible range of discretionary choices available." (Internal quotation marks omitted.)). Because this case comes to us on mandamus, "our task is not to conduct our own review of the facts; rather, it is to decide whether the evidence in the record, assessed under the correct legal standard, would have *compelled* a decision in relator's favor." *State ex rel Kristof v. Fagan*, 369 Or 261, 279, 504 P3d 1163 (2022) (emphasis in original). As to factual findings, "our function is to decide whether there was any evidence to substantiate the circuit court's ruling." *State ex rel Ware v. Hieber*, 267 Or 124, 127, 515 P2d 721 (1973).

We begin with the certified advocate-victim privilege. OEC 507-1. That privilege was added to the Oregon Evidence Code in 2015. Or Laws 2015, ch 265, § 2. Subsection (1) of OEC 507-1 defines, among other terms, "certified

advocate" and "confidential communication." Subsection (2) then provides that certain advocate-victim communications are privileged, and subsection (3) sets out an exception to that privilege:

> "(2)   Except as provided in subsection (3) of this section, a victim has a privilege to refuse to disclose and to prevent any other person from disclosing:

> "(a)   Confidential communications made by the victim to a certified advocate in the course of safety planning, counseling, support or advocacy services.

> "(b)   Records that are created or maintained in the course of providing services regarding the victim.

> "(3)   The privilege established by this section does not apply to the disclosure of confidential communications, only to the extent disclosure is necessary for defense, in any civil, criminal or administrative action that is brought against the certified advocate, or against the qualified victim services program, by or on behalf of the victim."

In other words, advocate-victim communications are generally privileged and need not be disclosed, except in certain cases brought by or on behalf of the victim *against the certified advocate* or qualified victim services program.

Here, relator asserted the certified advocate-victim privilege in opposing respondent's request for production of relator's communications with her advocate in the FAPA proceeding. The trial court nevertheless compelled production of those communications. The court's order did not address the applicability of the privilege, noting only that discovery was "a must." The court revealed more of its reasoning in its order denying relator's motion to stay the proceedings, where it cited the exception set out in OEC 507-1(3). In quoting that section, however, the court omitted a critical phrase: that the exception to the privilege applies only in cases "against the certified advocate, or against the qualified victim services program."

The trial court's interpretation and application of subsection (3) was legal error. By its plain text, subsection (3) does not apply here, because the underlying action was *not* brought against the certified advocate or against the

qualified victim services program. Relator's FAPA proceeding was brought against respondent, her husband, who is neither the advocate nor the described program. We therefore turn to application of the privilege to the communications between relator and her certified advocate.

The parties dispute exactly what evidence here is privileged under OEC 507-1 and whether relator waived all or a part of that privilege by introducing certain evidence during the FAPA proceedings. Those are legal questions that depend on preliminary factual findings to be made by the trial court. *See* OEC 104(1); *State v. Langley*, 314 Or 247, 263, 839 P2d 692 (1992), *adh'd to on recons*, 318 Or 28, 861 P2d 1012 (1993). Nothing in the record indicates that the trial court ruled on the extent to which the privilege applies to any specific communications between relator and her certified advocate. The court also did not rule on the extent to which relator, by using certain video clips at the FAPA hearing, may have waived that privilege under OEC 511 as to some or all of her privileged communications.

As noted, the trial court based its order compelling production on the exception in OEC 507-1(3) and the cryptic statement that pretrial discovery "is a must" in FAPA proceedings, which can lead to the "loss of liberty" and of "Constitutional Freedoms." We have concluded that applying the exception in OEC 507-1(3) was legal error. In later proceedings before the trial court, the parties will have an opportunity to build a factual record and to make legal arguments regarding the application and potential waiver of the privilege as to specific communications or other evidence under OEC 507-1.

We turn to the memory card. The trial court compelled production of the entire physical memory card. Relator argues that respondent's request for production of the memory card violates ORCP 36 because it is overly broad and unduly burdensome.

ORCP 36, which governs discovery, generally allows parties to "inquire regarding any matter, not privileged, that is relevant" to any party's claims or defenses. ORCP 36 B(1). The information sought, however, must be "reasonably

calculated to lead to the discovery of admissible evidence." *Id*. On the motion of the party from whom discovery is sought, ORCP 36 C(1) permits the trial court to restrict or limit the terms and conditions of discovery, as "justice requires[,] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The decision of whether to do so is discretionary. *See Doe v. Corp. of Presiding Bishop*, 352 Or 77, 86, 280 P3d 377 (2012) ("The issuance and vacation of protective orders are matters of a trial court's discretion."). In these circumstances, for mandamus to lie, as noted above, the trial court's decision must amount to "fundamental legal error" or be "outside the permissible range of discretionary choices available." *Longo*, 355 Or at 531 (internal quotation marks omitted).

At the FAPA hearing, relator offered six video exhibits that were clips from six different videos on the memory card. After they were admitted, relator provided the full versions of those six videos, along with their meta-data (including the time and date of each recording, as logged by the camera) to respondent. In his first request for production, respondent asked for "[t]he unaltered memory card from the dash camera of the parties['] vehicle." Relator objected, explaining that the memory card included numerous additional videos, none of which was relevant or submitted as evidence at the hearing. Relator further explained that divulging the videos to respondent could expose relator to further danger of abuse by informing respondent about relator's destinations, traveling times, and whereabouts.

In respondent's motion to compel, he cited OEC 106, which he called the "Rule of Completeness," and argued that he was entitled to inspect the entire memory card because relator had introduced parts of files that were stored on that card. As noted above, the trial court granted the motion to compel without addressing ORCP 36 C or OEC 106.

OEC 106, the rule respondent relies upon, does not compel the result that respondent seeks. OEC 106 provides:

"When part of an act, declaration, conversation or writing is given in evidence by one party, the whole on the same subject, where otherwise admissible, may at that time be inquired into by the other; when a letter is read, the answer

may at that time be given; and when a detached act, declaration, conversation or writing is given in evidence, any other act, declaration, conversation or writing which is necessary to make it understood may at that time also be given in evidence."

Assuming without deciding that OEC 106—an evidentiary rule regarding admissibility, not discovery—applies here, it would not extend so far as to require producing the entire memory card as part of discovery. Relator concedes that, as applied to this case, OEC 106 required relator to provide respondent with the complete videos from which the evidentiary clips admitted into evidence were taken, and it appears that she has already produced those videos. The other videos on the memory card, however, are not part of the same "act, declaration, conversation or writing," nor are they "necessary to make [the offered clips] understood." OEC 106. Therefore, OEC 106 does not support compelling production of the entire memory card.

Because, contrary to respondent's position, OEC 106 does not require relator to produce the physical memory card itself, the trial court was presented with no meritorious argument to support compelling production. Without such an argument, and with no alternative explanation from the court for its ruling, the court's order to produce the memory card is legally unsupported and cannot stand. It is possible that further proceedings before the court could provide a factual and legal basis for production, with appropriate limitations or restrictions, of the memory card or the information it contains, but the current record provides no such grounds. On this record, the order compelling production must be vacated.

A peremptory writ of mandamus shall issue.