No. 40 November 7, 2024 63

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff,*

*v.*

ARTHUR RONALD SACCO,
*Defendant-Intervenor,*

*and*

CLACKAMAS WOMEN'S SERVICES,
*Relator.*

(CC 23CR49530) (SC S071003)

En Banc

Original proceeding in mandamus.*

Argued and submitted September 26, 2024.

Emily Rena-Dozier, Oregon Law Center, Portland, argued the cause and filed the brief for relator. Also on the brief was Ashley Cadotte, Ashley Cadotte Law Portland.

Gregory Rios, Assistant Attorney General, Salem, argued the cause and filed the brief for plaintiff. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Laura Graser, Portland, argued the cause and filed the brief for defendant-intervenor.

Emily La Brecque, Oregon Law Center, Portland, filed the brief for *amicus curiae* Oregon Crime Victims Law Center.

BUSHONG, J.

A peremptory writ of mandamus shall issue.

_____

* On petition for peremptory writ of mandamus from an order of Clackamas County Circuit Court, Ulanda L. Watkins, Judge.

*duces tecum*

*Held*

**BUSHONG, J.**

This original mandamus proceeding involves the scope of the certified advocate-victim privilege, OEC 507-1, and a related statute, ORS 147.600, as applied to a trial court's pretrial discovery order in a criminal case.

Defendant, who was charged with crimes of domestic violence, served a pretrial subpoena *duces tecum* on Clackamas Women's Services (CWS) to obtain records relating to services that CWS may have provided to the alleged victim, AV.[1] Without acknowledging whether it had in fact provided any assistance to AV, CWS moved to quash the subpoena. CWS contended that disclosing the records sought in the subpoena is prohibited by OEC 507-1 and ORS 147.600, because those provisions protect both "confidential communications" between CWS and victims of domestic violence and all "records" that CWS had created or maintained in the course of providing services to those victims.

In response, defendant explained that he sought the financial records to support his contention that AV had fabricated her claims of domestic violence to obtain financial assistance from CWS. Defendant also contended that the name of the cell phone service provider and the account number for any cell phone that CWS had given to AV could be used to subpoena the provider's records for possible use in challenging AV's credibility at trial. The trial court quashed the subpoena in part but ordered CWS to produce records disclosing the cell phone information and the amount and type of any financial assistance that CWS had provided to AV. CWS sought mandamus relief in this court.

CWS contends that the records that the trial court ordered it to produce are both "confidential communications" and "records that are created or maintained in the course of providing services regarding the victim" as those terms are used in ORS 147.600(2) and OEC 507-1(2), and that disclosure without AV's consent is thus prohibited by the statute and the rule. Defendant responds that the

---

[1] The alleged victim was named in the indictment; we refer to her throughout this opinion by her initials, AV. When discussing the rights and protections provided by OEC 507-1 and ORS 147.600, we use the term "victim" because that is the term used in the rule and statute.

specific information he seeks is not a "confidential communication" and that the trial court's order did not require CWS to produce any "record" that it created or maintained in the course of providing services to AV.[2] Because we agree with CWS that the records that the trial court ordered it to produce are included within the "records" protection provided by the statute and rule, we issue a peremptory writ of mandamus directing the trial court to vacate its orders.

As we will explain, the rule and the statute broadly protect from disclosure all records created or maintained by CWS in the course of providing services regarding victims of domestic violence. That includes records that do not themselves contain confidential communications between CWS and a victim. The trial court's suggestion that CWS could comply with its order without violating the rule or statute by producing the information in the form of an email or a new document fails because the trial court had no authority to require CWS to create a new record disclosing the information contained in existing records that are themselves protected. Because we conclude that the broad protection of CWS's records precluded the trial court from ordering production of records pertaining to any cell phone or other financial assistance it may have provided to AV, it is unnecessary for us to determine whether disclosure is also barred by the protection for "confidential communications."

## I.   BACKGROUND

The facts are procedural and undisputed. We summarize the pertinent facts from the trial court record. Defendant was charged with committing several criminal offenses against AV, including kidnapping, strangulation constituting domestic violence, coercion constituting domestic violence, fourth-degree assault constituting domestic violence, interference with making a report, and harassment.

Defendant served a subpoena *duces tecum* on CWS—a nonprofit organization that provides counseling, safety planning, financial assistance, and other services to

---

[2] Defendant also contends that disclosure is required to comply with his constitutional rights to confrontation, compulsory process, and a fair trial. As we will explain, we decline in this mandamus proceeding to address defendant's constitutional arguments.

victims of domestic violence in Clackamas County—because he thought that CWS may have provided services to AV. The subpoena requested the following records:

> "all records involving [AV] *** including but not limited to applications for assistance, all services provided, all financial assistance provided, logs and/or notes of contact, Domestic Violence grants, the phone number for the telephone provided to her, the contact information for her advocate, and any statements made regarding domestic violence."

CWS moved to quash the subpoena, arguing that the requested records, if any exist, are shielded from discovery under ORS 147.600 (preventing victim services programs from disclosing a victim's confidential communications and records without the victim's written, informed consent) and OEC 507-1 (granting victims a privilege to prevent disclosure of confidential communications and records created or maintained in the course of providing services regarding the victim).[3]

The trial court held a hearing on the motion to quash. At that hearing, defendant argued that he was entitled to the records sought in the subpoena because AV was making false accusations of domestic violence to make money. Defendant asserted that AV might have received material benefits from CWS because of her allegations against him, and he stated that his purpose in seeking records from CWS was to impeach AV's credibility. According to defendant, AV had waived any privilege by revealing on social media that she had been receiving domestic violence services. However, defendant acknowledged that none of AV's social media messages or postings revealed whether she had received services from CWS specifically. Defendant also acknowledged that he had no actual knowledge that CWS had provided any services to AV, but stated that he knew that AV had obtained housing and a cell phone and had subpoenaed the records to determine whether AV had received CWS's assistance in obtaining those items.

CWS responded that OEC 507-1 and ORS 147.600 made any records that might be responsive to the subpoena

---

[3] We set out and discuss that statute and rule later in the opinion.

privileged and prohibited CWS from disclosing those records without the victim's consent.

The trial court did not address defendant's waiver argument.[4] Instead, the court inquired about the breadth of the information that defendant had requested in the subpoena. Defendant confirmed that he was seeking the phone number and identity of the cell phone provider for any cell phone that CWS had given AV, and the amount and nature of any other financial assistance that CWS had given to her. The court stated that it did not think that any of that information was a "confidential communication" prohibited from disclosure under the certified advocate-victim privilege. CWS responded that OEC 507-1(2) and ORS 147.600(2) shield not only "confidential communications" but also "[r]ecords that are created or maintained in the course of providing services regarding the victim."

The trial court concluded that the term "records," as used in the rule and statute, included "applications or paperwork" that a victim fills out, and the court acknowledged that those records would not be disclosable under Oregon law. But the court ruled that neither the term "records" nor the term "confidential communications" covers a phone number or the identity of a cell phone service provider for any phone that CWS may have helped AV obtain or financial assistance information that concerns only AV, and it concluded that CWS must produce records revealing that information. The court suggested that CWS could comply with its order by creating a new document that contained the information and producing that document, or by disclosing the information via email. The trial court's written order granted CWS's motion to quash in part and denied it in part, requiring CWS to produce

"the following records subject to a qualified protective order:

"1. The phone number and service provider of the phone [CWS] provided to [AV], if any was provided;" and

---

[4] In this court, defendant appears to have abandoned the argument that the victim waived the privilege by posting about receiving domestic violence services on social media. He acknowledges that "neither the complainant nor CWS formally waived the privilege" conferred by OEC 507-1.

"2.   The amount and type of any financial benefit or assistance [CWS] provided to [AV], if any was provided."

Thereafter, defendant moved to compel production of those records, and the trial court granted that motion.

CWS then petitioned this court for a writ of mandamus, and the trial court delayed defendant's trial pending resolution of this mandamus proceeding.[5]

## II.   DISCUSSION

### A.   *Interpreting the Statute and Evidentiary Rule*

Resolving CWS's mandamus petition requires us to interpret a rule of evidence, OEC 507-1(2), and an almost identical statute, ORS 147.600(2). We interpret both by applying "our traditional method of statutory interpretation[,] focusing on text, context, and legislative history." *Gollersrud v. LPMC, LLC*, 371 Or 739, 745, 541 P3d 864 (2023) (citing *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009)). We begin with the text.

OEC 507-1(2) provides as follows:

"Except [in a circumstance not applicable here], a victim has a privilege to refuse to disclose and to prevent any other person from disclosing:

"(a)   Confidential communications made by the victim to a certified advocate in the course of safety planning, counseling, support or advocacy services.

"(b)   Records that are created or maintained in the course of providing services regarding the victim."[6]

_____

[5] After CWS filed its mandamus petition, the trial court issued orders vacating its prior orders, and then issued orders rescinding the vacating orders. The rescinding orders restated the terms of the original orders resolving the motion to quash and motion to compel production.

[6] OEC 507-1(3) provides that the privilege "does not apply to the disclosure of confidential communications, only to the extent disclosure is necessary for defense, in any civil, criminal or administrative action" brought against the certified advocate or program "by or on behalf of" the victim. OEC 507-1(4) provides that the privilege "is not waived by disclosure of the communications by the certified advocate to another person if the disclosure is reasonably necessary to accomplish the purpose for which the certified advocate is consulted." OEC 507-1(5) provides that the privilege "does not prohibit the disclosure of aggregate, nonpersonally identifying data."

A "certified advocate" is defined in the rule as a person who "[h]as completed at least 40 hours of training in advocacy for victims of domestic violence, sexual assault or stalking" and is an employee or volunteer of a "qualified victim services program." OEC 507-1(1)(a). A "qualified victim services program" is a "nongovernmental, nonprofit, community-based program *** that offers safety planning, counseling, support or advocacy services to victims of domestic violence, sexual assault or stalking" or a "sexual assault center, victim advocacy office, women's center, student affairs center, health center or other program providing safety planning, counseling, support or advocacy services to victims[.]" OEC 507-1(1)(c). There is no dispute that CWS is a qualified victim services program and that its employees and volunteers are certified advocates.

The text of ORS 147.600 is almost identical to OEC 507-1. It also protects both "[c]onfidential communications" and "[r]ecords *** created or maintained in the course of providing services regarding the victim" and it employs the same definitions of the key terms. One difference is that ORS 147.600(2)(a) protects confidential communications "between a victim and the certified advocate or qualified victim services program," whereas OEC 507-1(2)(a) only protects confidential communications "made by the victim." Another difference is that ORS 147.600(2) provides that a certified advocate or qualified victim services program "may not disclose" the protected information, whereas OEC 507-1(2) gives a victim a "privilege" to refuse to disclose "and to prevent any other person" from disclosing the protected information. Finally, ORS 147.600(2) expressly precludes disclosure "without the written, informed consent of the victim."[7] OEC 507-1(2) does not expressly preclude disclosure without the victim's consent, but that follows from the text of the rule that gives a victim "a privilege to refuse to disclose and to prevent any other person from disclosing" confidential communications and records protected by the rule.

---

[7] ORS 147.600(3) provides an exception—identical to the exception in OEC 507-1(3)—that allows disclosure to the extent necessary for the defense of any action brought against the certified advocate or program "by or on behalf of" the victim and "[a]s otherwise required by law." ORS 147.600(4) provides that the statute "does not prohibit the disclosure of aggregate, nonpersonally identifying data."

The term "records" is not defined in the rule or statute, but the ordinary meaning of the word "record" is "an account in writing or print (as in a document) * * * intended to perpetuate a knowledge of acts or events." *Webster's Third New Int'l Dictionary* 1898 (unabridged ed 2002). The breadth of that definition confirms what is apparent from the text of the "records" provision: OEC 507-1(2)(b) and ORS 147.600 (2)(b) are intended to protect *all* records created or maintained by a qualified victim services program in the course of providing services regarding a victim, even if the information contained in those records does not reveal the substance of a confidential communication.

Reading the text of the "records" provision in the context of the rest of the statute, the rule, and other related statutes and rules, confirms that understanding. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (context includes other provisions of the same statute and other related statutes). The category of materials protected from disclosure as a "record" is much broader than that protected as a "confidential communication" under the statute and rule. "Confidential communications" as defined in both OEC 507-1(1)(b) and ORS 147.600(1)(b) are communications that are "not intended for further disclosure," but no similar limitation pertains to records under OEC 507-1(2)(b) and ORS 147.600(2)(b). Additionally, the privilege for confidential communications protects communications "to a certified advocate" by the victim, OEC 507-1(2)(a), whereas records are protected regardless of where the information came from, so long as the record is "created or maintained" by the qualified victim services program "in the course of providing services regarding the victim," OEC 507-1(2)(b).

Most evidentiary privileges are limited to protecting "confidential communications" and do not have any additional protection for "records" comparable to OEC 507-1 and ORS 147.600. *See, e.g.*, OEC 503 (attorney-client privilege); OEC 504 (psychotherapist-patient privilege); OEC 504-1 (physician-patient privilege); OEC 505 (spousal privilege); OEC 506 (member of clergy-penitent privilege). Evidentiary privileges that protect a "confidential matter or communication" may be waived by the voluntary disclosure of "any

significant part of the matter or communication." OEC 511. That waiver does not expressly apply to "records" protected by OEC 507-1(2)(b) because those records are protected even if they are not considered a "confidential matter or communication." Additionally, the certified advocate-victim privilege expressly provides that the "privilege"—including the privilege to refuse disclosure and prevent any other person from disclosing records—is not waived by voluntary disclosures by the certified advocate if those disclosures are "reasonably necessary to accomplish the purpose" for which the certified advocate was consulted. OEC 507-1(4).[8]

The legislature's intent to broadly protect records covered by the certified advocate-victim privilege is supported by another statute that protects both communications and records. ORS 41.675, enacted in 1963, protects communications and records of a peer review body of health care providers. *See Straube v. Larson*, 287 Or 357, 363, 600 P2d 371 (1979) (holding that, under ORS 41.675, a plaintiff "may not use the records made in the hospital disciplinary proceedings" in a medical malpractice case). That protection expressly applies to "all oral communications or written reports to a peer review body, and all notes or records created by or at the direction of a peer review body[.]" ORS 41.675(2). That statute, like OEC 507-1 and ORS 147.600, but unlike the other evidentiary privileges listed above, broadly protects records even if the information in those records is not confidential.

Finally, our conclusion is consistent with the legislative history of OEC 507-1 and ORS 147.600. Both provisions were part of House Bill (HB) 3476, enacted by the legislature unanimously in 2015. Or Laws 2015, ch 265, § 2. HB 3476 was designed to ensure "that 'confidential

---

[8] Ballot Measure 10, the Crime Victim's Bill of Rights, approved by the voters in 1986, provides additional context for OEC 507-1 and ORS 147.600, which were enacted in 2015. Measure 10 guaranteed certain rights for crime victims, among them a crime victim's right to keep his or her phone number from the defendant in a criminal case. That right was codified at ORS 135.970(1), which provides:

"If the victim or a witness requests, the court shall order that the victim's or witness's address and phone number not be given to the defendant unless good cause is shown to the court."

As relevant here, that statute defines "victim" as "the person or persons who have suffered financial, social, psychological or physical harm as a result of a crime against the person[.]" ORS 135.970(5).

communications' between a victim of sexual assault, domestic violence or stalking and victim advocates or services programs are *** kept confidential from disclosure, and by default will not be admissible in court." Staff Measure Summary, House Committee on Judiciary, HB 3476, Apr 6, 2015. Although there was little discussion of the "records" protection explicitly in the legislative history, Attorney General Ellen Rosenblum testified that passage of the bill would make Oregon the ninth state to provide "a complete privilege" between victims and certified victim advocates. Video Recording, House Committee on Judiciary, HB 3476, Mar 25, 2015, at 11:38 (testimony of Attorney General Ellen Rosenblum), https://olis.oregonlegislature.gov (accessed Nov 1, 2024); *see also id*. at 28:34 (testimony of Jessica Amo, Director of the PSU Women's Resource Center, explaining that the passage of HB 3476 would provide for "fully confidential services").

As one witness explained, the need for HB 3476 arose because a federal law required college and university employees to investigate student complaints of sexual assault and make a report that, in turn, would trigger an administrative process. Exhibit 4, House Committee on Judiciary, HB 3476, Mar 25, 2015 (written testimony of Jessica Amo, the Director of the PSU Women's Resource Center). HB 3476 was intended to ensure "fully confidential services" to "support student safety" by providing students with the ability to seek services from a qualified victim services program without triggering a mandatory investigation if the victim did not want that outcome. *Id.* Bill proponents explained that "[p]rotecting confidentiality and ensuring privacy and anonymity are critical to a survivor's confidence when seeking support and resources," because "fearing the risk of exposure has a chilling effect on the survivor seeking help." Exhibit 12, House Committee on Judiciary, HB 3476, Mar 25, 2015 (written testimony of Larry Large, President of the Oregon Alliance of Independent Colleges and Universities). Advocates stressed that "[v]ictims need assurances of confidentiality" because, "[w]ithout statutory confidentiality and privacy protections, victims risk exposure without consent through court proceedings, subpoenas, and more." Exhibit 1, House Committee on Judiciary, HB 3476, Mar 25, 2015 (written testimony of

Sybil Hebb of the Oregon Law Center). Along the same lines, Representative Ann Lininger, one of the sponsors of HB 3476, testified that the bill would give victims the opportunity to obtain the "confidential counseling they need without fear that the information could be used against them." Video Recording, House Committee on Judiciary, HB 3476, Mar 25, 2015, at 7:14 (testimony of Rep Ann Lininger), https://olis.oregonlegislature.gov (accessed Nov 1, 2024).

Those statements all help explain why the text of the protection for "records" is worded broadly. Protecting the privacy of victims was thought to be necessary to avoid the "chilling effect" that otherwise would prevent survivors of domestic violence from seeking the support services they need. Broadly protecting all records created or maintained in the course of providing services to any victim who sought services from a qualified victim services program avoids that chilling effect.

B.   *Application to This Case*

Defendant does not dispute that, in general, records created and maintained by CWS in the course of providing services to victims of domestic violence are protected by OEC 507-1 and ORS 147.600. Rather, defendant contends that the protection does not preclude CWS from disclosing the records ordered by the trial court. Specifically, defendant contends that, as the trial court concluded, "an application the complainant may have filled out to receive assistance" would be a protected "record," but that "[a] telephone number, the name of the carrier, and [the] dollar-amount" of any financial assistance are not confidential and are not protected "records" created or maintained in the course of providing services regarding the victim. We disagree.

Whether phone records and records of financial assistance are themselves "confidential communications" does not matter because, as discussed above, OEC 507-1 and ORS 147.600 broadly protect CWS's "records" even if those records do not contain confidential communications. The only limitation is that the protected records must have been "created or maintained in the course of providing services regarding the victim." The records described in the trial court's order fit that description. For example, if CWS helped

AV obtain a cell phone, that assistance would be a service that CWS provided regarding AV because CWS considered her to be a victim of domestic violence. Any phone bill or provider agreement that CWS possesses as a result of providing that assistance would be a "record" maintained by CWS in the course of providing services regarding AV. Similarly, any records of financial assistance to AV that exist would have been created or maintained by CWS "in the course of providing services" regarding AV. Such records fall squarely within the protection provided by OEC 507-1 and ORS 147.600.

That conclusion follows from the plain meaning of the word "records" as used in OEC 507-1 and ORS 147.600. As noted above, a "record" is a written account that is created or maintained "to perpetuate a knowledge of acts or events." In this context, CWS would have "knowledge" of any actions that it took to provide financial assistance to AV and help her obtain a cell phone only because CWS is a victim advocacy program that provides such services to victims of domestic violence. Any document that CWS received from a phone company identifying the name of the provider and the account number for AV's cell phone, for example, would be a "record" maintained by CWS in the course of providing services regarding AV and thus, disclosure is prohibited by OEC 507-1(2)(b) and ORS 147.600(2)(b). The same is true of records of any other financial assistance that CWS may have provided to AV.

The trial court's distinction between those records and "applications and paperwork" filled out by a victim is immaterial under the rule and statute. OEC 507-1 and ORS 147.600 protect *all* records created or maintained in the course of providing services regarding a victim of domestic violence without any distinction based on the nature of those records. Nothing in the text, context, or legislative history discussed above shows that the legislature intended to limit the records protection to applications and paperwork filled out by the victim.[9]

---

[9] In contrast to the "records" protection, the privilege for "confidential communications" provided by OEC 507-1(2)(a) only applies to confidential communications "made by the victim" to the certified advocate. That protection would cover applications and other paperwork filled out by the victim. The records protection provided by OEC 507-1(2)(b) is not limited to records "made by the victim."

The trial court stated that the records protection provided by OEC 507-1 and ORS 147.600 was limited to "records normally kept in the regular course of business." But the text of the rule and the statute protects records "created or maintained in the course of providing services regarding the victim," not records "normally kept in the regular course of business." The latter phrase refers to the "business records" exception to the hearsay rule, OEC 803(6), which applies to records that are "kept in the course of a regularly conducted business activity." The protection of "records" of a qualified victim services program provided by OEC 507-1(2) and ORS 147.600(2) covers *all* records "created or maintained in the course of providing services regarding the victim," not just those records that CWS normally keeps in the regular course of its business.[10] And as discussed above, any records relating to AV's cell phone and any other financial assistance that CWS may have provided to her are records "created or maintained in the course of providing services regarding the victim."

The trial court suggested that CWS could comply with its order by using the information in its records to create a new record—either a document to be turned over to defendant or an email—disclosing the cell phone and financial assistance information. The trial court's written order did not expressly require CWS to create such a record, nor did it identify the source of the court's authority to require CWS, a nonparty to the criminal case pending before the trial court, to create a new record containing the information about a phone and any financial assistance that it may have provided to AV. To the extent that the trial court's order to produce "records" was intended to require CWS to create a new record disclosing the cell phone and financial information to be produced, the trial court had no authority to order CWS to create such a record.

---

[10] The distinction makes sense because the rules serve different purposes. The business records exception to the hearsay rule allows business records to be received in evidence because the fact that they were kept in the course of a regularly conducted business activity makes the records sufficiently reliable to be received as evidence. OEC 507-1 and ORS 147.600 prevent disclosure of records to protect the privacy of victims of domestic violence regardless of the evidentiary reliability of the records.

The statutes governing pretrial discovery in criminal cases, ORS 135.805 through 135.873, address disclosures by the state, not by third parties. Defendant cites the subpoena power provided under ORS 136.580, but that statute does not authorize the court to order the recipient of a subpoena to create a new document. ORS 136.580 allows criminal defendants to issue subpoenas *duces tecum* requesting witnesses to bring "books, papers or documents" to the trial or trial-related court proceedings at which the documents may be offered into evidence.[11] Nothing in that statute authorizes the trial court to order a nonparty to create a new document to comply with a subpoena *duces tecum*. Defendant cites no other statute giving the trial court the authority to require CWS to create a new document that it could disclose to comply with the court's order.

The broad protection for "records" provided by OEC 507-1 and ORS 147.600 would be meaningless if it could be circumvented by simply requiring a qualified victim services program to use existing records to create a new document that could be disclosed. Such an interpretation would effectively read the "records" protection out of the rule and statute, contrary to established principles of statutory interpretation. *See* ORS 174.010 (courts should interpret statutes in a way that "will give effect to all" provisions therein). As discussed, the legislative history summarized above confirms that the rule and statute were intended to apply to *all* records related to a victim's participation in advocacy services. Defendant does not identify anything in the text, context, or legislative history suggesting that the broad protection provided for existing records can be circumvented by ordering a victim services program to create and produce a new record disclosing information contained in the program's existing records.

OEC 507-1 and ORS 147.600 broadly protect from disclosure all records created or maintained by CWS "in the

---

[11] We have recognized that ORS 136.580(2) allows criminal defendants to ask witnesses for the early production—before trial or before that material is to be offered in evidence—"of material that, in the ordinary course and as a matter of right, will be available for evidentiary use at the proceeding to which they already have been subpoenaed." *State v. Cartwright*, 336 Or 408, 415, 85 P3d 305 (2004).

course of providing services regarding [AV].” If CWS has any records related to financial assistance that it provided to AV, including assistance in obtaining a cell phone, those records were created or maintained by CWS in the course of providing services regarding AV. The trial court's order to produce such records without AV's consent thus violates both the evidentiary privilege and the statute, and the court had no authority to order CWS to create a new document to circumvent that protection.

C.   *Defendant's Constitutional Arguments*

Defendant argues that, if the trial court's pretrial order requiring CWS to produce records is prohibited by OEC 507-1 and ORS 147.600, that statutory prohibition is overcome by defendant's constitutional rights to confront his accuser and to have compulsory process to subpoena witnesses and their records under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. Defendant further contends that his constitutional right to a fair trial under the state and federal constitutions will be violated if he cannot obtain the records that the trial court ordered CWS to produce.

We decline to address defendant's constitutional arguments in this mandamus proceeding. Defendant did not raise any constitutional arguments in the trial court in support of his subpoena *duces tecum*, and the trial court did not make any ruling relating to the confrontation clause, compulsory process, or right to a fair trial in ordering CWS to produce records about the phone or financial assistance it may have provided to AV. Rather, its ruling was based solely on its conclusion that the “records” it ordered CWS to produce were neither “confidential communications” nor “records” within the meaning of OEC 507-1 and ORS 147.600.

Mandamus relief is appropriate where, as here, a trial court misinterprets the scope of a privilege or statute and erroneously orders disclosure of protected information. That is because an ordinary appeal after disclosure does not provide an adequate remedy. *See I.H. v. Ammi*, 370 Or 406, 520 P3d 877 (2022) (granting mandamus relief where the

trial court legally erred in ordering disclosure of protected records under the exception to the certified advocate-victim privilege in OEC 507-1(3)); *Crimson Trace Corp. v. Davis Wright Tremaine LLP*, 355 Or 476, 485, 326 P3d 1181 (2014) ("A trial court decision ordering the disclosure of privileged information is subject to review in mandamus precisely because ordinary appeal provides an inadequate remedy.").

Raising these constitutional issues in the trial court, subject to appellate review on direct appeal, ordinarily provides an adequate remedy for a violation of a defendant's constitutional rights of confrontation or compulsory process. *See State v. Weaver*, 367 Or 1, 472 P3d 717 (2020) (holding on direct appeal that a co-defendant's plea agreement that required him to invoke his privilege against self-incrimination to prevent him from testifying on the defendant's behalf violated the defendant's Article I, secion 11, right to compulsory process); *State v. Willis*, 348 Or 566, 236 P3d 714 (2010) (holding on direct appeal that admitting a crime lab report without supporting testimony from the police criminalist who wrote it violated the defendant's Sixth Amendment right to confront witnesses). Similarly, if defendant is convicted, he can argue on direct appeal that he was denied a fair trial. *See State v. Chitwood*, 370 Or 305, 518 P3d 903 (2022) (holding on direct appeal that prosecutor's improper arguments during closing were so egregious that they deprived the defendant of a fair trial).

Because defendant can raise his constitutional arguments in the trial court, subject to review on direct appeal, we decline to address those arguments as presented in the context of this mandamus proceeding.[12]

### III.   CONCLUSION

The trial court ordered CWS to produce records disclosing whether AV had received financial assistance from CWS, including assistance in obtaining a cell phone. Because those records, if they exist, were "created or maintained [by CWS] in the course of providing services regarding" AV,

---

[12] That conclusion does not mean that mandamus relief may not be sought to address any ruling compelling or declining to compel disclosure of records protected by OEC 507-1(2)(b) and ORS 147.600(2)(b) after consideration of defendant's constitutional arguments.

disclosure is prohibited under OEC 507-1(2)(b) and ORS 147.600(2)(b). At this stage of the proceedings, absent any showing that the constitution required otherwise, the trial court had no authority to circumvent that prohibition by requiring CWS to produce the information contained in those records in the form of an email or other new record created in response to the trial court's order. Accordingly, we conclude that the trial court's pretrial orders violate OEC 507-1(2) and ORS 147.600(2).[13]

A peremptory writ of mandamus shall issue.

---

[13] Our decision in this mandamus proceeding is limited to the pretrial discovery orders issued by the trial court. We need not and do not decide whether and to what extent OEC 507-1 or ORS 147.600 might apply to a witness's testimony at trial.